Allison C. Eckstrom, California Bar No. 217255
allison.eckstrom@bclplaw.com
Christopher J. Archibald, California Bar No. 253075
christopher.archibald@bclplaw.com
Michael E. Olsen, California Bar No. 307358
michael.olsen@bclplaw.com
**BRYAN CAVE LEIGHTON PAISNER LLP**
3161 Michelson Drive, Suite 1500
Irvine, California  92612-4414
Telephone:   (949) 223-7000
Facsimile:    (949) 223-7100

Attorneys for Defendants
WALGREEN CO. and WALGREEN CO./ILL.

# UNITED STATES DISTRICT COURT

# EASTERN DISTRICT OF CALIFORNIA, SACRAMENTO DIVISION

| | |
|---|---|
| LUCAS MEJIA on behalf of himself and others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>WALGREEN CO., an Illinois corporation; WALGREEN CO./ILL., a business entity unknown; and DOES 1 to 100, Inclusive,<br><br>Defendants. | Case No.<br><br>(Yolo County Superior Court Case No. CV18-2061)<br><br>**NOTICE OF REMOVAL OF CIVIL ACTION BY DEFENDANT WALGREEN CO.**<br><br>**[CLASS ACTION FAIRNESS ACT JURISDICTION]**<br><br>**[28 U.S.C. §§ 1332, 1441, 1446, AND 1453]**<br><br>*[Filed concurrently with Declarations of Amelia Legutki and Alicia Musgrove; Civil Cover Sheet; and Corporate Disclosure Statement]* |

USA01\12468646

NOTICE OF REMOVAL OF CIVIL ACTION

**TO THE HONORABLE JUDGES OF THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF CALIFORNIA AND TO PLAINTIFF LUCAS MEJIA AND HIS ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that Defendant Walgreen Co. ("Walgreens" or "Defendant") hereby removes the above-entitled action from the Superior Court of the State of California for the County of Yolo to the United States District Court for the Eastern District of California under the Class Action Fairness Act ("CAFA"), pursuant to 28 U.S.C. §§ 1332(d), 1441, 1446 and 1453, on the grounds that: (1) Plaintiff Lucas Mejia ("Plaintiff") is a "citizen of a State different from" at least one of the Defendants; (2) "the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs;" and (3) "the number of members of all proposed plaintiff classes in the aggregate is" more than 100.

## PROCEDURAL BACKGROUND

1. On November 6, 2018, Plaintiff commenced a class-action lawsuit against Defendants in the Superior Court of the State of California for the County of Yolo, entitled "*Lucas Mejia, on behalf of himself and others similarly situated, Plaintiff vs. Walgreen Co, an Illinois corporation; Walgreen Co.,/Ill., a business entity unknown; and Does 1 to 100, inclusive, Defendants*," Case No. CV18-2061.

2. On January 3, 2019, Plaintiff caused the Summons and Complaint, Civil Case Cover Sheet, Notice of Case Management Conference and Related Orders, and Case Management Packet to be personally served upon Walgreens. A true and correct copy of the Complaint is attached as **Exhibit 1**. A true and correct copy of the Summons is attached as **Exhibit 2**. A true and correct copy of the Civil Case Cover Sheet is attached as **Exhibit 3**. A true and correct copy of the Notice of Case Management Conference and Related Orders is attached as **Exhibit 4**. A true and correct copy of the Case Management Packet is attached as **Exhibit 5**.

3. On January 22, 2019, Plaintiff caused the First Amended Complaint ("FAC") to be personally served upon Walgreens. A true and correct copy of the First Amended Complaint is attached as **Exhibit 6**.

4. On January 30, 2019, Defendants filed their Answer to Plaintiff's First Amended

BRYAN CAVE LEIGHTON PAISNER LLP
3161 MICHELSON DRIVE, SUITE 1500
IRVINE, CA 92612-4414

1  Complaint.  A true and correct copy of the Answer is attached as **Exhibit 7**.

2      5.    Exhibits 1 through 7 to this Notice of Removal constitute all pleadings, process and orders served in this action at the time of removal.

    6.    Plaintiff's FAC defines the putative class as "current, former and/or future employees of DEFENDANTS who worked, work, or will work for DEFENDANTS as non-exempt employees in California at its distribution centers."  (FAC, ¶ 3.)

    7.    Plaintiff alleges the following causes of action against Defendants on behalf of himself and the proposed putative class:  (1) Failure to Pay Minimum Wage for All Hours Worked in Violation of Labor Code Sections 510, 1194, 1198, and the Wage Orders; (2) Failure to Pay Overtime for All Overtime Hours Worked in Violation of Labor Code Sections 510, 1194, 1198, and the Wage Orders; (3) Failure to Provide All Legally Required and Legally Compliant Meal Periods in Violation of Labor Code Sections 226.7, 512, 1198, and the Wage Orders; (4) Failure to Provide All Legally Required and Legally Compliant Rest Breaks in Violation of Labor Code Section 226.7, 1198, and the Wage Orders; and (5) Failure to Provide Complete and Accurate Wage Statements in Violation of  Labor Code Section 226; (6) Failure to Timely Pay All Unpaid Wages after Separation of Employment in Violation of Labor Code Sections 201, 202, and 203; (7) Unfair Business Practices in Violation of Business and Professions Code Section 17200, *et seq.*; and (8) Civil Penalties Pursuant to the Private Attorneys General Act of 2004.

## REMOVAL IS TIMELY

    8.    A case may be removed at any time, provided that neither of the two 30-day periods under 28 U.S.C. § 1446(b)(1) and (b)(3) has been triggered.  *Roth v. CHA Hollywood Med. Ctr., L.P.*, 720 F.3d 1121, 1126 (9th Cir. 2013).

    9.    28 U.S.C. § 1446(b)(1) provides that, "[t]he notice of removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based . . . ."

    10.    "[N]otice of removability under § 1446(b)(1) is determined through examination of

BRYAN CAVE LEIGHTON PAISNER LLP  
3161 MICHELSON DRIVE, SUITE 1500  
IRVINE, CA  92612-4414

the four corners of the applicable pleadings[.]" *Harris v. Bankers Life & Cas. Co.*, 425 F.3d 689, 694 (9th Cir. 2005). The Complaint and FAC do not "reveal on [their] face the facts necessary for federal court jurisdiction." *Rea v. Michaels Stores, Inc.*, 742 F.3d 1234, 1238 (9th Cir. 2014) (quoting *Harris*, 425 F.3d at 691–92). Specifically, they do not reveal on their face that the amount in controversy exceeds $75,000 for traditional diversity purposes, nor that the amount in controversy exceeds $5,000,000 for CAFA removal purposes.

11. Plaintiff never served Defendant with an "other paper" sufficient to trigger the second 30-day clock. 28 U.S.C. § 1446(b)(3).

12. Therefore, because neither of the two 30-day periods under 28 U.S.C. § 1446(b)(1) and (b)(3) has been triggered, removal is timely.

13. Nonetheless, Defendant removes this action within 30 days of being served with Plaintiff's Complaint and FAC, so removal is timely.

## JURISDICTION

## PLAINTIFF'S FAC IS SUBJECT TO REMOVAL UNDER CAFA

14. The Court has original jurisdiction over this action pursuant to CAFA. As such, this action may be removed to this Court by Defendant pursuant to 28 U.S.C. §§ 1332(d), 1441, 1446 and 1453.

15. Under CAFA, the federal district court has jurisdiction if:

    a) There are at least 100 class members in all proposed plaintiff classes; and

    b) The combined claims of all class members exceed $5 million exclusive of interest and costs; and

    c) Any class member (named or not) is a citizen of a different state than any defendant. 28 U.S.C. §§ 1332(d)(2), 1332(d)(5)(B) and 1453(a).

A. <u>The Diversity Of Citizenship Requirement Is Satisfied</u>

16. **Plaintiff Is a Citizen of California**. A person is a "citizen" of the state in which he is domiciled. *Kantor v. Wellesley Galleries, Ltd.*, 704 F.2d 1088, 1090 (9th Cir. 1983). A person's domicile is the place he resides with the intention to remain or to which he intends to

1  return. *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001). Plaintiff alleges, "At
2  all times mentioned herein, the currently named Plaintiff is and was domiciled and a resident and
3  ***citizen*** of California and was employed by DEFENDANTS in a non-exempt position within the
4  4 years prior to the filing of the complaint." (FAC, ¶ 3) (emphasis added.) As such, Plaintiff is
5  and, at all times since the commencement of this action has been, a resident and citizen of
6  California.

7      17.    **Walgreen Co. Is a Citizen of Illinois**. At the time of the filing of this action,
8  Walgreen Co. was, and still is, a corporation incorporated under the laws of the State of Illinois
9  with its principal place of business in Illinois. (Declaration of Amelia Legutki ("Legutki Decl."),
10 ¶ 2.)

11     18.    Pursuant to 28 U.S.C. § 1332(c), a corporation shall be deemed to be a citizen of
12 any state by which it has been incorporated and of the state where it has its principal place of
13 business. The Supreme Court has established the proper test for determining a corporation's
14 principal place of business for purposes of diversity jurisdiction. *Hertz Corp. v. Friend*, 559 U.S.
15 77 (2010). The Court held that the "'principal place of business' [as set forth in section 1332(c)]
16 is best read as referring to the place where a corporation's officers direct, control, and coordinate
17 the corporation's activities." *Id.* at 92-93. The Court further clarified that the principal place of
18 business was the place where the corporation "maintains its headquarters – provided that the
19 headquarters is the actual center of direction, control and coordination." *Id.* at 93; *see also*
20 *Montrose Chemical v. American Motorists Ins. Co.*, 117 F.3d 1128, 1134 (9th Cir. 1997) (holding
21 that a corporation's principal place of business is the state in which it performs a substantial
22 predominance of its corporate operations and, when no state contains a substantial predominance
23 of the corporation's business activities, then the corporation's principal place of business is the
24 state in which the corporation performs its executive and administrative functions).

25     19.    Walgreen Co.'s corporate headquarters are located in Deerfield, Illinois where its
26 officers direct, control and coordinate Walgreen Co.'s activities. (Legutki Decl., ¶ 2.) Walgreen
27 Co.'s operations are managed from this location, including, but not limited to, those operations
28 relating to administering company-wide policies and procedures, legal affairs, and general

business operations.  (*Id.*)  Thus, Walgreen Co. is a citizen of the State of Illinois.

20. **The Citizenship of "Doe Defendants" Must Be Disregarded.**  The citizenship of fictitiously-named "Doe" defendants is to be disregarded for the purposes of removal.  28 U.S.C. § 1441(a).

21. The minimal diversity requirement of 28 U.S.C. § 1332(d) is met in this action because the citizenship of at least one putative class member is diverse from the citizenship of at least one defendant.  28 U.S.C. § 1332(d)(2)(A).  Plaintiff, a putative class member, is a citizen of California. (FAC, ¶ 3.)  Defendant Walgreen Co. is a citizen of Illinois. (Legutki Decl., ¶ 2.)  The citizenship of "Doe" defendants is disregarded for purposes of removal.  28 U.S.C. § 1441(b)(1).  Therefore, the requisite minimal diversity exists between the parties.

B.  There Are At Least 100 Class Members in the Proposed Class

22. Plaintiff purports to bring this action on behalf of "current, former and/or future employees of DEFENDANTS who worked, work, or will work for DEFENDANTS as non-exempt employees in California at its distribution centers."  (FAC, ¶ 3.)

23. Defendant denies Plaintiff's claims and makes no admission by way of this removal.

24. Based on the putative class, as defined in the FAC, more than 2,188 individuals fall within the putative class.  (Musgrove Decl., ¶ 2.)

C.  The Requisite $5 Million Amount In Controversy Is Satisfied[1]

25. Based on the allegations in the FAC, and the conservative assumptions below, the alleged amount in controversy exceeds, in the aggregate, $5 million.

**a.  Unpaid Minimum Wages**

26. Labor Code § 1194, subdivision (a) provides: "Notwithstanding any agreement to work for a lesser wage, an employee receiving less than the legal minimum wage or the legal

---

[1] In alleging the amount in controversy for purposes of CAFA removal, Defendant specifically denies that it is liable to Plaintiff or the putative class for any of the claims alleged in the FAC, denies that the allegations in the FAC are accurate, and denies that Plaintiff and the putative class are entitled to any of the monetary relief requested in the FAC.  Defendant further denies that any or all of the putative class members are appropriately included in the putative class.

overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation . . . ."

27.     Plaintiff alleges that Defendants failed to pay minimum wages because they had a "procedure of recording employees' times but rounding those times to 'rounded' time increments … which failed to compensate employees for all of the hours that they worked." (FAC, ¶ 11.) Defendants also required the putative class members to "pass through security checks and wait in line for employees passing through security checks before their shift, after their shift, and/or if leaving/entering when leaving the premises for a meal period… However DEFENDANTS did not compensate Plaintiff and other non-exempt, distribution center employees with any wages for this time." (*Id*.)  Additionally, Plaintiff claims that "DEFENDANTS had a policy and procedure at distribution centers of deducting more time from an employee's compensable hours than was taken for a meal period if the meal period exceeded 30 minutes." (*Id*.)

28.     Plaintiff alleges the failure to pay minimum wages constitutes unfair competition within the meaning of Business and Professions Code Section 17200. (FAC, ¶ 81.) The statute of limitations for such a claim is four years. Cal. Bus. & Prof. Code § 17208. Accordingly, the measure of potential damages for the minimum wage claim is based on a four-year limitations period.

29.     Defendant denies it failed to pay Plaintiff or any member of the putative class minimum wages and further denies that any wages are due and owing to Plaintiff and the putative class members. However, because Plaintiff has alleged that Defendants failed to pay minimum wages by rounding the putative class members' time, requiring them to pass through security checks four times per work shift, and deducting extra time from the putative class members' meal breaks, the court should apply to the amount in controversy requirement a conservative assumption of 20 minutes of unpaid minimum wages for each putative class member during each workweek. This equates to the amount of time it would take to pass through the security checks in a 5-day workweek if it only took one minute each time. It does not even take into account Plaintiff's theories regarding "rounding" and shaving of time from meal breaks that exceed 30 minutes. *See, e.g., Soto v. Greif Packaging*, LLC, 2018 WL 1224425, *3 (C.D. Cal. Mar. 8, 2018)

(finding it reasonable to assume one hour of unpaid wages per employee per workweek where plaintiff alleged that defendant failed to pay him and the class members for all hours worked on a consistent and regular basis); *Reyes v. Carehouse Healthcare Center, LLC*, 2017 WL 2869499, *4 (C.D. Cal. July 5, 2017) (defendant's estimate of one hour of unpaid overtime wages per workweek was reasonable where plaintiff alleged that defendants engaged in a regular practice of depriving plaintiff and the class members of compensation).

30. Here, assuming only 20 minutes of unpaid minimum wages per week for each putative class member, and using the lowest California minimum wage applicable during the putative class period, the total amount of unpaid minimum wages would exceed **$747,150** (*i.e.*, $9.00 [minimum wage as of July 1, 2014] x 249,050 [number of weeks worked by putative class members during the class period] x 1/3 of an hour [20 minutes]).  (Musgrove Decl., ¶ 4.)

### b. Unpaid Overtime Wages

31. Labor Code § 1194, subdivision (a) provides: "Notwithstanding any agreement to work for a lesser wage, an employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation . . . ."

32. Plaintiff alleges that Defendants failed to pay overtime wages because they had a "procedure of recording employees' times but rounding those times to 'rounded' time increments … which failed to compensate employees for all of the hours that they worked." (FAC, ¶ 15.) Defendants also required the putative class members to "pass through security checks and wait in line for employees passing through security checks before their shift, after their shift, and/or if leaving/entering when leaving the premises for a meal period… However DEFENDANTS did not compensate Plaintiff and other non-exempt, distribution center employees with any wages for this time." (*Id*.)  Additionally, Plaintiff claims that "DEFENDANTS had a policy and procedure at distribution centers of deducting more time from an employee's compensable hours than was taken for a meal period if the meal period exceeded 30 minutes." (*Id*.)

33. Plaintiff alleges the failure to pay overtime wages constitutes unfair competition within the meaning of Business and Professions Code Section 17200.  (FAC, ¶ 81.) The statute of

1 limitations for such a claim is four years. Cal. Bus. & Prof. Code § 17208. Accordingly, the measure of potential damages for the overtime claim is based on a four-year limitations period.

34.     Defendant denies that it failed to pay Plaintiff or any member of the putative class overtime wages and further denies that any wages are due and owing to Plaintiff and the putative class members. However, because Plaintiff has alleged that Defendants failed to pay overtime wages by rounding the putative class members' time, requiring them to pass through security checks four times per work shift, and deducting extra time from the putative class members' meal breaks, the court should apply to the amount in controversy requirement a conservative assumption of 20 minutes of unpaid overtime wages for each putative class member during each workweek. This equates to the amount of time it would take to pass through the security checks in a 5-day workweek if it only took one minute each time. It does not even take into account Plaintiff's theories regarding "rounding" and shaving of time from meal breaks that exceed 30 minutes. *See, e.g., Soto v. Greif Packaging*, LLC, 2018 WL 1224425, *3 (C.D. Cal. Mar. 8, 2018) (finding it reasonable to assume one hour of unpaid wages per employee per workweek where plaintiff alleged that defendant failed to pay him and the class members for all hours worked on a consistent and regular basis); *Reyes v. Carehouse Healthcare Center, LLC*, 2017 WL 2869499, *4 (C.D. Cal. July 5, 2017) (defendant's estimate of one hour of unpaid overtime wages per workweek was reasonable where plaintiff alleged that defendants engaged in a regular practice of depriving plaintiff and the class members of compensation).

35.     Here, assuming only 20 minutes of unpaid overtime wages per week for each putative class member, the total amount of unpaid wages would exceed **$2,365,975** (*i.e.*, $28.50 [1.5 times the average hourly wage rate applicable during class period] x 249,050 [number of weeks worked by putative class members during the class period] x 1/3 of an hour [20 minutes]). (Musgrove Decl., ¶¶ 3-4.)

### c.     Unpaid Meal Period Premiums

36.     Plaintiff alleges that "employees were required to only take a thirty minute meal break but were also required to pass through security checks and/or wait in line for employees passing through security checks during their meal period time if leaving/entering the premises

1  during meal periods, resulting in DEFENDANTS providing less than a 30 minute meal break."

2  (FAC, ¶ 19.)  He claims that "DEFENDANTS discouraged employees from taking a meal period

3  off-premises by limiting an employees' ability to take a full 30 minute meal period off-premises."

4  (*Id.*)

5        37.    Under California law, employees who are denied the opportunity to take proper

6  meal periods are entitled to one hour of premium pay for each day that a meal period is not

7  provided. *See Marlo v. United Parcel Service, Inc.*, 2009 WL 1258491, *7 (C.D. Cal. 2009). As a

8  matter of law, meal period claims are properly considered in determining the amount in

9  controversy. *See, e.g., Muniz v. Pilot Travel Ctr. LLC*, 2007 WL 1302504, *4 (E.D. Cal. 2007);

10  *Helm v. Alderwoods Group, Inc.*, 2008 WL 2002511, *8 (N.D. Cal. 2008).

11        38.    Plaintiff also alleges the failure to provide meal periods constitutes unfair

12  competition within the meaning of Business and Professions Code Section 17200.  (FAC, ¶ 81.)

13  The statute of limitations for such a claim is four years.  Cal. Bus. & Prof. Code § 17208.

14  Accordingly, the measure of alleged potential damages for the meal break claim is based on a

15  four-year limitations period.

16        39.    Where, as here, a plaintiff alleges that Defendants did not provide meal breaks of

17  30 minutes in length because some of that time was compensable and/or because they did not

18  permit off-premises meal breaks, it is reasonable to assign a 100% violation rate for purposes of

19  calculating the amount in controversy.

20        40.    However, although Defendant would be well within its right to apply a 100%

21  violation rate, for removal purposes, Defendant assumes a violation rate of one violation per

22  putative class member per workweek.  This is more than reasonable, as numerous courts have held

23  that an estimate of one violation per workweek is proper when a plaintiff alleges that the violation

24  occurs as a result of a systematic practice or that it occurs regularly or consistently. *See Campbell*

25  *v. Vitran Exp., Inc.,* 471 Fed. Appx. 646, 649 (9th Cir. 2012) (finding an assumption that "each

26  claimant missed at least one rest break and one meal break per week" was adequately supported by

27  the complaint where the complaint alleged that defendant "regularly and consistently failed to

28  provide uninterrupted meal and rest periods")*; Byrd v. Masonite Corp.,* 2016 WL 2593912, *5

(C.D. Cal. May 5, 2016) (allegations of a systematic practice supports the "assumption that each class member missed one meal period and one rest period per week"); *Garza v. Brinderson Constructors, Inc.,* 178 F.Supp.3d 906, 911 (N.D. Cal. 2016) (assumption of one meal and one rest violation per week reasonable where the complaint alleged that plaintiff "regularly" missed meal breaks); *Arreola v. Finish Line,* 2014 WL 6982571, at *4 (N.D. Cal. Dec. 9, 2014) (finding that pleading "regular or consistent practice" supports assumption that every class member "experienced at least one violation once per week"). Plaintiff's allegation that Defendants failed to provide him with meal breaks ***because*** they failed to provide meal breaks of the proper length and/or failed to permit him to leave their premises justifies an assumed violation rate at least as high as when a plaintiff claims that violations occurred regularly, consistently, or systematically.

41.     Defendant denies that it failed to provide Plaintiff and members of the putative class with legally-compliant meal breaks. However, assuming Plaintiff and the putative class members were denied the opportunity to take one compliant meal break each workweek during the class period, the total amount of missed meal break premiums would exceed **$4,731,950** (*i.e.*, $19.00 [average hourly wage rate applicable during class period] x 249,050 [number of weeks worked by putative class members during the class period]). (Musgrove Decl., ¶¶ 3-4.)

### d.     Unpaid Rest Period Premiums

42.     Plaintiff also alleges Defendants failed to authorize and permit rest breaks because they "would require Plaintiff and other hourly employees to stay on the premises, thus, failing to relieve the employees of all duties and subjecting them to their control." (FAC, ¶ 23.) Plaintiff alleges that "if an employer requires employees to stay on the premises during the rest period, they are under control of the employer and they are not relieved of all duties in violation of California law." (FAC, ¶ 22.) In other words, Plaintiff claims that he and the putative class members were never authorized and permitted to take rest breaks because they were required to remain on Defendants' premises.

43.     Under California law, employees who are denied the opportunity to take proper rest periods are entitled to one hour of premium pay for each day that a rest period is not authorized or permitted. *See Marlo v. United Parcel Service, Inc.*, 2009 WL 1258491, *7 (C.D. Cal. 2009). As

a matter of law, rest period claims are properly considered in determining the amount in controversy. *See, e.g., Muniz v. Pilot Travel Ctr. LLC*, 2007 WL 1302504, *4 (E.D. Cal. 2007); *Helm v. Alderwoods Group, Inc.*, 2008 WL 2002511, *8 (N.D. Cal. 2008).

44.   Plaintiff also alleges the failure to provide rest periods constitutes unfair competition within the meaning of Business and Professions Code Section 17200. (FAC, ¶ 81.) The statute of limitations for such a claim is four years. Cal. Bus. & Prof. Code § 17208. Accordingly, the measure of alleged potential damages for the rest break claim is based on a four-year limitations period.

45.   Where, as here, a plaintiff alleges that Defendants did not provide rest breaks because they did not permit off-premises rest breaks, it is reasonable to assign a 100% violation rate for purposes of calculating the amount in controversy.

46.   However, although Defendant would be well within its right to apply a 100% violation rate, for removal purposes, Defendant assumes a violation rate of one violation per putative class member per workweek. This is more than reasonable, as numerous courts have held that an estimate of one violation per workweek is proper when a plaintiff alleges that the violation occurs as a result of a systematic practice or that it occurs regularly or consistently. *See Campbell v. Vitran Exp., Inc.,* 471 Fed. Appx. 646, 649 (9th Cir. 2012) (finding an assumption that "each claimant missed at least one rest break and one meal break per week" was adequately supported by the complaint where the complaint alleged that defendant "regularly and consistently failed to provide uninterrupted meal and rest periods")*; Byrd v. Masonite Corp.,* 2016 WL 2593912, *5 (C.D. Cal. May 5, 2016) (allegations of a systematic practice supports the "assumption that each class member missed one meal period and one rest period per week"); *Garza v. Brinderson Constructors, Inc.,* 178 F.Supp.3d 906, 911 (N.D. Cal. 2016) (assumption of one meal and one rest violation per week reasonable where the complaint alleged that plaintiff "regularly" missed meal breaks); *Arreola v. Finish Line,* 2014 WL 6982571, at *4 (N.D. Cal. Dec. 9, 2014) (finding that pleading "regular or consistent practice" supports assumption that every class member "experienced at least one violation once per week"). Plaintiff's allegation that Defendants failed to provide him with rest breaks ***because*** they failed to permit him to leave their premises justifies

an assumed violation rate at least as high as when a plaintiff claims that violations occurred regularly, consistently, or systematically.

47.  Defendant denies that it failed to provide Plaintiff and members of the putative class with legally-compliant rest breaks.  However, assuming Plaintiff and the putative class members were denied the opportunity to take one compliant rest break each workweek during the class period, the total amount of missed rest break premiums would exceed **$4,731,950** (*i.e.*, $19.00 [average hourly wage rate applicable during class period] x 249,050 [number of weeks worked by putative class members during the class period]).  (Musgrove Decl., ¶¶ 3-4.)

### e. Waiting Time Penalties

48.  Plaintiff alleges, "DEFENDANTS willfully failed to pay all wages to Plaintiff and other non-exempt distribution center employees (including unpaid minimum wage and overtime pay and premium wages for failure to provide legally compliant meal and/or rest breaks) during their employment each week and never paid these amounts after Plaintiff and other distribution center employees separated employment with DEFENDANTS."  (FAC, ¶ 30.)  He seeks penalties pursuant to Labor Code § 203 for all putative class members who were terminated or resigned equal to their daily wage times thirty days.  (FAC, ¶ 76.)  The statute of limitations for penalties under California Labor Code § 203 is three years.  *See* Cal. Civ. Proc. Code § 338(a).

49.  The number of putative class members who stopped working for Defendants between November 6, 2015 and December 31, 2018 is at least 759.  (Musgrove Decl., ¶ 5.)  Accordingly, based on the allegations of the FAC, any putative class member who stopped working for Defendant during the relevant time period is entitled to 30 days' continuation of wages as a penalty under California Labor Code section 203.  *See Quintana v. Claire's Stores, Inc.*, 2013 WL 1736671, *4-6 (N.D. Cal. 2013) ("As to the waiting time claims, the court finds that Defendants' calculations" of thirty-days of waiting time penalties for each putative class member terminated during the statute of limitations "are supported by Plaintiffs' allegations and are a reasonable estimate of the potential value of the claims.").

50.  Thus, according to Plaintiff's allegations, Plaintiff contends former putative class members are entitled to recover at least **$3,461,040** (*i.e.* $19.00 [hourly rate during class period] x

8 [8-hour work day] x 30 days [waiting time penalty] x 759 [number of putative class members who stopped working for Defendant between November 6, 2015 and December 31, 2018]). (Musgrove Decl., ¶¶ 3, 5.)

### f. Attorneys' Fees

51. Plaintiff seeks attorneys' fees on behalf of the putative class. (FAC, Prayer for Relief, First Cause of Action, ¶ 6, Second Cause of Action, ¶ 5, Fifth Cause of Action, ¶ 4.) Attorneys' fees are properly included in the amount in controversy. *See, Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 700 (9th Cir. 2007) (statutorily-mandated attorneys' fees are properly included in the amount in controversy for CAFA jurisdiction purposes).

52. When, as here, a plaintiff seeks to recover attorneys' fees as permitted by California law, the court must consider future attorneys' fees when determining the amount in controversy. *Fritsch v. Swift Transportation Company of Arizona, LLC*, No. 18-55746, 2018 WL 3748667 (9th Cir. Aug. 8, 2018). In class action litigation, courts routinely grant attorneys' fees awards that range from 25% to 33% of the settlement or verdict amount. *See, e.g., Hanlon v. Center for Auto Safety*, 150 F.3d 1011, 1029 (9th Cir. 1998) ("This circuit has established 25% of the common fund as a benchmark award for attorney fees"); *In re Activision Securities Litigation*, 723 F. Supp. 1373, 1378 (N.D. Cal. 1989) (awarding 30% attorneys' fee award and compiling cases where range of attorneys' fee award ranged between 25% and more than 40%). Accordingly, including attorneys' fees of 25% is reasonable when calculating the amount in controversy. *See, e.g., Giannini v. Northwestern Mut. Life Ins. Co.*, 2012 WL 1535196, at *4 (N.D. Cal. 2012) (holding that defendant's inclusion of attorneys' fees to satisfy amount in controversy was reasonable where defendant's "base this amount by multiplying by twenty-five percent the sum of the amounts placed in controversy by the four claims" asserted by plaintiff.); *Jasso v. Money Mart Express, Inc.*, 2012 WL 699465, at *6-7 (N.D. Cal. 2012) (holding that "it was not unreasonable for [Defendant] to rely on" an "assumption about the attorneys' fees recovery as a percentage of the total amount in controversy" and noting that "it is well established that the Ninth Circuit 'has established 25% of the common fund as a benchmark award for attorney fees.'")

53.     Assuming Plaintiff prevailed on a class-wide basis in this case, the estimated attorneys' fees, based on the foregoing conservative calculations, would be **$4,009,516** (*i.e.*, $16,038,065 [amount in controversy] x 25%).

### g.     Summary of Amount in Controversy

In light of the foregoing, Plaintiff's allegations establish an amount in controversy well in excess of the jurisdictional minimum of $5 million for purposes of removal under CAFA.  The minimum amount in controversy, using the most conservative possible estimates, is summarized as follows:

| **Claim** | **Amount** |
|---|---:|
| Failure to pay minimum wage | $747,150 |
| Failure to pay overtime | $2,365,975 |
| Failure to provide meal breaks | $4,731,950 |
| Failure to provide rest breaks | $4,731,950 |
| Waiting time penalties | $3,461,040 |
| Attorneys' Fees | $4,009,516 |
| **Total:** | **$20,047,581** |

54.     Accordingly, removal of this action under CAFA is proper under 28 U.S.C. §1332(d).

### **THE PROCEDURAL REQUIREMENTS OF 28 U.S.C. § 1446 ARE SATISFIED**

55.     In accordance with 28 U.S.C. §1446(a), this Notice of Removal is filed in the District in which the action is pending.  The Yolo County Superior Court is located within the Eastern District of California.  Therefore, venue is proper in this court because it is the "district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a).

56.     In accordance with 28 U.S.C. §1446(a), copies of all process, pleadings, and orders served upon Defendant is attached as Exhibits to this Notice.

57.	In accordance with 28 U.S.C. §1446(d), a copy of this Notice is being served upon counsel for Plaintiff, and a notice will be filed with the Clerk of the Superior Court of California for the County of Yolo. Notice of Compliance shall be filed promptly afterwards with this court.

58.	As required by Federal Rule of Civil Procedure 7.1, Defendant concurrently filed its Corporate Disclosure Statement.

## **CONCLUSION**

For the foregoing reasons, Defendant hereby removes the above-entitled action to United States District Court for the Eastern District of California.

Dated: February 4, 2019

Allison C. Eckstrom
Christopher J. Archibald
Michael E. Olsen
**BRYAN CAVE LEIGHTON PAISNER LLP**

By:  */s/ Christopher J. Archibald*
      Christopher J. Archibald
Attorneys for Defendants
WALGREEN CO. and WALGREEN CO./ILL.