1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10                         ----oo0oo----

11

12   LUCAS MEJIA, on behalf of        No. 2:19-cv-00218 WBS AC
     himself and all others similarly
13   situated,

14              Plaintiff,            MEMORANDUM AND ORDER RE:
                                      MOTION FOR PRELIMINARY
15        v.                          APPROVAL OF CLASS ACTION
                                      SETTLEMENT
16   WALGREEN CO., an Illinois
     Corporation; WALGREEN CO./ILL.,
17   a business entity unknown; and
     DOES 1 to 100, inclusive,
18
                Defendants.
19

20                         ----oo0oo----

21           Plaintiff Lucas Mejia, individually and on behalf of

22   all other similarly situated employees, brought this putative

23   class action against defendants Walgreen Co. and Walgreen

24   Co./Ill. (collectively, "defendants") alleging violations of the

25   California Labor Code, Cal. Lab. Code §§ 201-203, 226.7, 510,

26   1194, 1997, 1198, the California Business and Professions Code,

27   Cal. Bus. Prof. Code § 17200, and the California Private

28
                                1

Attorneys General Act of 2004 ("PAGA"), Cal. Lab. Code § 2698, <u>et</u> <u>seq</u>. (<u>See</u> First Am. Compl. ("FAC") (Docket No. 1-6).) Plaintiff has filed an unopposed motion for preliminary approval of a class action settlement. (Mot. for Prelim. Approval (Docket No. 21-1).)

I.   <u>Factual and Procedural Background</u>

Defendants operate a nationwide pharmacy retail store chain. (Decl. of Jordan D. Bello ("Bello Decl.") ¶ 3 (Docket No. 21-2).) Plaintiff worked for defendants from approximately 2010 to December 2017 as an hourly stocker at one of defendants' California distribution centers. (FAC ¶ 3; Decl. of Lucas Mejia ("Mejia Decl.") ¶ 2 (Docket No. 21-4).) Many employees at defendants' distribution centers are paid hourly and thus are not exempt from minimum wage or overtime pay. (FAC ¶ 15.)

On November 6, 2018, Plaintiff filed a putative class action in the Superior Court for the County of Yolo, alleging that defendants utilized a number of employment practices that failed to credit non-exempt employees with all of the compensable time they had worked. (<u>See</u> compl. (Docket No. 1-1).) For instance, plaintiff alleged that defendants rounded down employees' hours on their timecards, required employees to pass through security checks before and after their shift without compensating them for time worked, and failed to pay premium wages to employees who were denied legally required meal breaks. (<u>See</u> Compl. ¶¶ 15, 18, 22, 27.) Plaintiff claimed that, through these and other unlawful employment practices outlined in the complaint, defendants (1) failed to pay wages to employees at the applicable minimum wage or overtime rate for all hours worked in

2

violation of California Wage Orders and California Labor Code
sections 510, 1194, 1197, and 1198; (2) failed to provide all
legally required and legally compliant meal and rest periods in
violation of California Wage Orders and California Labor Code
sections 226.7, 512, and 1198; (3) failed to provide complete and
accurate wage statements in violation of California Labor Code
section 226; and (4) failed to timely pay final wages to
employees after separation of employment in violation of
California Labor Code sections 201, 202, and 203.  (See Compl.)

On January 18, 2019, plaintiff amended his complaint to
add a claim for civil penalties under the PAGA based on
defendants' alleged violations of the California Labor Code.
(See FAC ¶¶ 84-91.)  Following removal of the case to this court,
the parties engaged in informal discovery until December 2019,
when they conducted a mediation before an experienced employment
litigation mediator, Lynne Frank, Esq.  (See Bello Decl. ¶ 7.)
The mediation, along with subsequent informal settlement
negotiations, produced the settlement agreement (the "Settlement
Agreement") before the court today.

As proposed, the Settlement Agreement contemplates a
release of all claims asserted in this action by the settlement
class, defined as "any current or former hourly non-exempt
employees who worked at any of [d]efendants' California
distribution centers at any time from November 6, 2014 to June 2,
2020."  (See Bello Decl., Ex. 1 ("Settlement Agreement") at 1
(Docket No. 21-2).)  The proposed settlement class consists of
approximately 2,648 current and former employees.  (Decl. of
Shawna Compton ("Compton Decl.") ¶ 6 (Docket No. 21-3).)

Defendants have agreed to pay up to $4,500,000 to create a common fund, from which payments will be made for (1) attorney's fees in an amount up to $1,500,000, or 33% of the fund; (2) litigation costs incurred by class counsel, estimated at $15,000; (3) an incentive award for plaintiff of $7,500; (4) settlement administration costs estimated at $35,000, payable to CPT Group, Inc.; and (5) the payment of $150,000 for civil penalties under the PAGA. (See id. at 15-17.) The remaining funds ("Net Settlement Amount"), estimated at $2,830,000, will be distributed to class members who do not opt out of the settlement. (See id. at Ex. 1, p. 5.)

Each participating class member is eligible to receive a proportional share of the Net Settlement Amount, depending on how many compensable workweeks the class member worked for defendants during the period covered by the settlement. (See id. at Ex. 1, pp. 5-6.) Plaintiff's counsel estimates that each class member will receive approximately $1,210.34. (See Bello Decl. ¶ 34.)

Seventy-five percent (75%) of the PAGA penalties, or $112,500, will be paid to the California Labor and Workforce Development Agency ("LWDA"); the remaining 25%, or $37,500, will be distributed to class members equally. (See Bello Decl., Ex. 1 at 16.) Plaintiff provided a copy of the proposed settlement agreement to the LWDA on October 26, 2020, concurrently with the filing of his Motion for Preliminary Approval. (Bello Decl. ¶ 41.)

The Notice of Class Action Settlement will be mailed to all class members via first class mail. The Notice informs class

1  members that they have the right to dispute the number of

2  workweeks attributed to them.  (See id., Ex. 1 at 14.)  Class

3  members shall have 60 days to either opt out or to submit an

4  objection to the proposed settlement.  (Id. at 6-7.)

5  II.  Discussion

6         Federal Rule of Civil Procedure 23(e) provides that

7  "[t]he claims, issues, or defenses of a certified class may be

8  settled . . . only with the court's approval."  Fed. R. Civ. P.

9  23(e).  "To vindicate the settlement of such serious claims,

10  however, judges have the responsibility of ensuring fairness to

11  all members of the class presented for certification."  Staton v.

12  Boeing Co., 327 F.3d 938, 952 (9th Cir. 2003).  "Where [] the

13  parties negotiate a settlement agreement before the class has

14  been certified, settlement approval requires a higher standard of

15  fairness and a more probing inquiry than may normally be required

16  under Rule 23(e)."  Roes, 1-2 v. SFBSC Mgmt., LLC, 944 F.3d 1035,

17  1048 (9th Cir. 2019) (citation and internal quotations omitted).

18         The approval of a class action settlement takes place

19  in two stages.  In the first stage, "the court preliminarily

20  approves the settlement pending a fairness hearing, temporarily

21  certifies a settlement class, and authorizes notice to the

22  class."  Ontiveros v. Zamora, No. 2:08-567 WBS DAD, 2014 WL

23  3057506, at *2 (E.D. Cal. July 7, 2014).  In the second, the

24  court will entertain class members' objections to (1) treating

25  the litigation as a class action and/or (2) the terms of the

26  settlement agreement at the fairness hearing.  Id.  The court

27  will then reach a final determination as to whether the parties

28  should be allowed to settle the class action following the

5

1  fairness hearing.  Id.

2        Consequently, this order "will only determine whether

3  the proposed class action settlement deserves preliminary

4  approval and lay the groundwork for a future fairness hearing."

5  See id. (citations omitted).

6     A.   Class Certification

7        To be certified, the putative class must satisfy both

8  the requirements of Federal Rule of Civil Procedure 23(a) and

9  (b).  Leyva v. Medline Indus. Inc., 716 F.3d 510, 512 (9th Cir.

10  2013).  The court will address each subpart in turn.

11        1.   Rule 23(a)

12        In order to certify a class, Rule 23(a)'s four

13  threshold requirements must be met: numerosity, commonality,

14  typicality, and adequacy of representation.  Fed. R. Civ. P.

15  23(a).  "Class certification is proper only if the trial court

16  has concluded, after a 'rigorous analysis,' that Rule 23(a) has

17  been satisfied."  Wang v. Chinese Daily News, Inc., 737 F.3d 538,

18  542-43 (9th Cir. 2013) (quoting Wal-Mart Stores, Inc. v. Dukes,

19  564 U.S. 338, 351 (2011)).

20          a.   Numerosity

21        While Rule 23(a)(1) requires that the class be "so

22  numerous that joinder of all members is impracticable," Fed. R.

23  Civ. P. 23(a)(1), it does not require "a strict numerical cut-

24  off."  McCurley v. Royal Seas Cruises, Inc., 331 F.R.D. 142, 167

25  (S.D. Cal. 2019) (citations omitted).  Generally, "the numerosity

26  factor is satisfied if the class compromises 40 or more members."

27  Id. (quoting Celano v. Marriott Int'l, Inc., 242 F.R.D. 544, 549

28  (N.D. Cal. 2007)).  Here, the parties estimate that there are

1  2,648 class members. (Compton Decl. ¶ 6.)  The numerosity element
2  is therefore satisfied.
3              b.   Commonality
4        Next, Rule 23(a) requires that there be "questions of
5  law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).
6  Rule 23(a)(2) is satisfied when there is a "common contention . .
7  . of such a nature that it is capable of classwide resolution --
8  which means that determination of its truth or falsity will
9  resolve an issue that is central to the validity of each one of
10 the claims in one stroke."  Wal-Mart Stores, 564 U.S. at 350.
11 "Plaintiffs need not show that every question in the case, or
12 even a preponderance of questions, is capable of classwide
13 resolution.  So long as there is 'even a single common question,'
14 a would-be class can satisfy the commonality requirement of Rule
15 23(a)(2)."  Wang, 737 F.3d at 544 (citing id.).
16       Here, the claims implicate common questions of law and
17 fact because they are all premised on policies that applied to
18 all class members equally.  All class members were non-exempt
19 hourly employees of defendants' distribution centers, and thus
20 share several common legal questions, including: (1) whether
21 defendants' policy of requiring "off the clock" security checks
22 or of rounding down employees' time worked on their timecards
23 violated California Labor Code §§ 510, 1194, and California Wage
24 Order 7; (2) whether defendants' meal and rest break policies
25 violated California Labor Code §§ 226.7 and 512, as well as
26 California Wage Order 5; (3) whether defendants' policy of
27 providing wage statements to their employees violated California
28 Labor Code § 226(a); (4) whether defendants' policy of providing

unpaid final wages violated California Labor Code §§ 201, 202, and 203; and (5) whether these violations of the California Labor Code entitle class members to PAGA penalties.  (See FAC ¶¶ 34-91.)

Generally, "challeng[ing] a policy common to the class as a whole creates a common question whose answer is apt to drive the resolution of the litigation."  Ontiveros, 2014 WL 3057506, at *5.  Even if individual members of the class will be entitled to different amounts of damages because, for instance, they were denied fewer meal and rest breaks than other employees or had their time rounded down less often than other employees, "the presence of individual damages cannot, by itself, defeat class certification."  Leyva, 716 F.3d at 514 (quoting Wal-Mart Stores, 564 U.S. at 362).  Accordingly, these common questions of law and fact satisfy Rule 23(a)'s commonality requirement.

c.   Typicality

Rule 23(a) further requires that the "claims or defenses of the representative parties [be] typical of the claims or defenses of the class."  Fed. R. Civ. P. 23(a)(3).  The test for typicality is "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct."  Sali v. Corona Reg'l Med. Ctr., 909 F.3d 996, 1006 (9th Cir. 2018) (quoting Hanon v. Dataproducts Corp., 976 F.2d 497, 508 (9th Cir. 1992)).  Here, the named plaintiff satisfies the typicality requirement.  The named plaintiff and the other class members all worked at defendants' distribution centers and performed similar, if not

1  the same, work.  Plaintiff and the other class members were all

2  subject to the same policies and practices in question, including

3  daily security checks, rounding down of time worked, and denial

4  of rest and meal periods.  (FAC ¶¶ 15, 18, 22, 27.)  Accordingly,

5  the typicality requirement is satisfied.

6                    d.   Adequacy of Representation

7         Finally, Rule 23(a) requires that "the representative

8  parties will fairly and adequately protect the interests of the

9  class."  Fed. R. Civ. P. 23(a)(4).  Rule 23(a)(4) "serves to

10 uncover conflicts of interest between named parties and the class

11 they seek to represent" as well as the "competency and conflicts

12 of class counsel."  Amchem Prods., Inc. v. Windsor, 521 U.S. 591,

13 625, 626 n.20 (1997).  The court must consider two factors: (1)

14 whether the named plaintiff and his counsel have any conflicts of

15 interest with other class members and (2) whether the named

16 plaintiff and his counsel will vigorously prosecute the action on

17 behalf of the class.  In re Hyundai and Kia Fuel Econ. Litig.,

18 926 F.3d 539, 566 (9th Cir. 2019) (quoting Hanlon v. Chrysler

19 Corp., 150 F.3d 1011, 1020 (9th Cir. 1998)).

20                    i.   Conflicts of Interest

21        The first portion of the adequacy inquiry considers

22 whether plaintiff's interests are aligned with those of the

23 class.  "[A] class representative must be part of the class and

24 possess the same interest and suffer the same injury as the class

25 members."  Amchem, 521 U.S. at 625-26 (internal modifications

26 omitted).

27        In most respects, the named plaintiff's interests

28 appear to be aligned with those of the class. (See generally

                              9

1    FAC.)  As described above, plaintiff was employed in the same
2    workplace, performed similar tasks, and was subjected to the same
3    policies and practices that allegedly violated California law as
4    other class members.  (Id.)  Despite the many similarities,
5    plaintiff alone stands to benefit for his participation in this
6    litigation by receiving an incentive award of $7,500.  (Mot. for
7    Preliminary Approval at 4.)  The use of an incentive award raises
8    the possibility that a plaintiff's interest in receiving that
9    award will cause his interests to diverge from the class's in a
10   fair settlement.  Staton, 327 F.3d at 977-78.  Consequently, the
11   court must "scrutinize carefully the awards so that they do not
12   undermine the adequacy of the class representatives."  Radcliffe
13   v. Experian Info. Sys., Inc., 715 F.3d 1157, 1163 (9th Cir.
14   2013).

15          Plaintiff's counsel estimates that each class member
16   will receive an average of approximately $1,210.34.  (Bello Decl.
17   ¶ 34.)  Plaintiff's proposed award of $7,500 represents
18   substantially more.  However, incentive awards "are intended to
19   compensate class representatives for work done on behalf of the
20   class, to make up for financial or reputational risk undertaken
21   in bringing the action, and, sometimes, to recognize their
22   willingness to act as a private attorney general."  Rodriguez v.
23   West Publ'g Corp., 563 F.3d 948, 958-59 (9th Cir. 2009).  Indeed,
24   the Ninth Circuit has consistently recognized incentive awards
25   are "fairly typical" way to "compensate class representatives for
26   work done on behalf of the class" or "to make up for financial or
27   reputational risk undertaken in bringing the action."  Id.

28          Here, a $7,500 incentive payment appears appropriate at

this stage.  The payment represents approximately 0.2% of the total settlement amount.  Plaintiff represents that he has spent significant amounts of time to bring this case, providing counsel with important documents, information, and insight regarding defendants' policies and practices.  (Mejia Decl. ¶ 4.)  While other courts have indicated that $7,500 may be on the higher end of what is acceptable in the Ninth Circuit, see Roe v. Frito-Lay, Inc., No. 14CV-00751, 2017 WL 1315626, at *8 (N.D. Cal. Apr. 7, 2017) ("[A] $5,000 incentive award is 'presumptively reasonable' in the Ninth Circuit.") (collecting cases), there are also examples of courts awarding higher incentive awards in analogous cases,  see, e.g., Villalpando v. Exel Direct Inc., No. 3:12-cv-04137-JCS, 2016 WL 7785852, at *2 (N.D. Cal. Dec. 9, 2016) (awarding each named plaintiff $15,000 following misclassification suit).  Though the incentive award here does not appear to create a conflict of interest, the court emphasizes this finding is only a preliminary determination.  Plaintiff represents he will formally seek the incentive award through a separate motion, to be heard at the final approval hearing. (Mot. for Prelim. Approval at 4.)  At that time, plaintiff should be prepared to present further evidence of his substantial efforts taken as a class representative to better justify the discrepancy between the award and those of the unnamed class members.

### ii.  Vigorous Prosecution

The second portion of the adequacy inquiry examines the vigor with which the named plaintiff and his counsel have pursued the class's claims.  "Although there are no fixed standards by

11

1  which 'vigor' can be assayed, considerations include competency

2  of counsel and, in the context of a settlement-only class, an

3  assessment of the rationale for not pursuing further litigation."

4  Hanlon, 150 F.3d at 1021.

5       Here, class counsel appear to be experienced employment

6  and class action litigators fully qualified to pursue the

7  interests of the class.  (Bello Decl. ¶¶ 35-40.)  Class counsel

8  represent that they have each litigated numerous wage and hour

9  class actions as lead counsel in state and federal court and that

10  they have carefully vetted their clients' claims and defendants'

11  arguments through rigorous legal analysis.  (Id. ¶¶ 11-40 (citing

12  cases).)  This experience, coupled with the diligent work

13  expended on this case, suggest that class counsel are well-

14  equipped to handle this case.  Accordingly, the court finds that

15  plaintiff and plaintiff's counsel are adequate representatives of

16  the class.

17       2.   Rule 23(b)

18       After fulfilling the threshold requirements of Rule

19  23(a), the proposed class must satisfy the requirements of one of

20  the three subdivisions of Rule 23(b).  Leyva, 716 F.3d at 512.

21  Plaintiff seeks provisional certification under Rule 23(b)(3),

22  which provides that a class action may be maintained only if "the

23  court finds that questions of law or fact common to class members

24  predominate over questions affecting only individual members" and

25  "that a class action is superior to other available methods for

26  fairly and efficiently adjudicating the controversy."  Fed. R.

27  Civ. P. 23(b)(3).  The test of Rule 23(b)(3) is "far more

28  demanding," than that of Rule 23(a).  Wolin v. Jaguar Land Rover

1  N. Am., LLC, 617 F.3d 1168, 1172 (9th Cir. 2010) (quoting Amchem,

2  521 U.S. at 623-24).

3                    a.   Predominance

4            "The predominance analysis under Rule 23(b)(3) focuses

5  on 'the relationship between the common and individual issues' in

6  the case and 'tests whether proposed classes are sufficiently

7  cohesive to warrant adjudication by representation.'"  Wang, 737

8  F.3d at 545 (quoting Hanlon, 150 F.3d at 1022).   However,

9  plaintiff is not required to prove that the predominating

10  question will be answered in his favor at the class certification

11  stage.  Amgen Inc. v. Conn. Ret. Plans & Tr. Funds, 568 U.S. 455,

12  468 (2013).

13            Here, the claims brought by the proposed settlement

14  class all arise from defendants' same conduct.  For example, all

15  class members were subjected to defendants' requirement that they

16  submit to a security check off the clock, defendants' quarter

17  hour rounding policy, defendants' meal and rest break policy, and

18  defendants' policy regarding payment of final, unpaid wages.

19  (Bello Decl. ¶¶ 11-34.)  These policies serve as common facts

20  uniting plaintiff's individual claims and the class claims.

21  Common questions of law include whether defendants' policies and

22  practices violated various sections of the California Labor Code,

23  California Wage Orders, and the California Business and

24  Professions Code, as well as whether defendants' violations of

25  the California Labor Code give rise to penalties under the PAGA.

26  (See FAC ¶¶ 34-91.)  The class claims thus demonstrate a "common

27  nucleus of facts and potential legal remedies" that can properly

28  be resolved in a single adjudication.  See Hanlon, 150 F.3d at

13

1022.  Accordingly, the court finds common questions of law and
fact predominate over questions affecting only individual class
members.

                    b.   Superiority

          Rule 23(b)(3) sets forth four non-exhaustive factors
that courts should consider when examining whether "a class
action is superior to other available methods for fairly and
efficiently adjudicating the controversy."  Fed. R. Civ. P.
23(b)(3).  They are: "(A) the class members' interests in
individually controlling the prosecution or defense of separate
actions; (B) the extent and nature of any litigation concerning
the controversy already begun by or against class members; (C)
the desirability or undesirability of concentrating the
litigation of the claims in the particular forum; and (D) the
likely difficulties in managing a class action."  Id.  Factors
(C) and (D) are inapplicable because the parties settled this
action before class certification.  See Syed v. M-I LLC, No.
1:14-cv-00742 WBS BAM, 2019 WL 1130469, at *6 (E.D. Cal. Mar. 12,
2019) (citation omitted).  Therefore, the court will focus
primarily on factors (A) and (B).

          Rule 23(b)(3) is concerned with the "vindication of the
rights of groups of people who individually would be without
effective strength to bring their opponents into court at all."
Amchem, 521 U.S. at 617.  When class members' individual recovery
is relatively modest, the class members' interests generally
favors certification.  Zinser v. Accufix Res. Inst., Inc., 253
F.3d 1180, 1190 (9th Cir. 2001).  Again, plaintiff's counsel
estimates that class members will receive approximately

                              14

$1,210.34.  (Bello Decl. ¶ 34.)  This anticipated sum, while
modest in light of the $4,500,000 recovery, represents a strong
result for the class given the strength of the claims, the risks
of litigation and delay, and the defendants' potential exposure.
(Bello Decl. ¶¶ 33-34.)  Accordingly, factor (A) weighs in favor
of certification.

Factor (B), concerning the "extent and nature of the
litigation," is "intended to serve the purpose of assuring
judicial economy and reducing the possibility of multiple
lawsuits."  Zinser, 253 F.3d at 1191 (quoting 7A Charles Alan
Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and
Procedure § 1780 at 568-70 ("Wright & Miller") (2d ed. 1986)).
If the court finds that several other actions already are pending
and that "a clear threat of multiplicity and a risk of
inconsistent adjudications actually exist, a class action may not
be appropriate since, unless the other suits can be enjoined, . .
. a Rule 23 proceeding only might create one more action."  Id.
(quoting Wright and Miller at 568-70)).  "Moreover, the existence
of litigation indicates that some of the interested parties have
decided that individual actions are an acceptable way to proceed,
and even may consider them preferable to a class action."  Id.
(quoting Wright and Miller at 568-70).

Here, plaintiff states that two substantially similar
putative class actions against defendants are currently pending
in United States District Courts.  (See Mot. for Prelim. Approval
at 13-14; Notice of Related Case (Docket No. 16).)  The first,
Whittington v. Walgreen Co. et al., Case No. 2:20-cv-00600-WBS-
CKD, is a wage and hour class action that was filed on behalf of

15

the same class as this action in Sacramento County Superior Court in January 2020, and which was removed to this court in March 2020.  The second case, Neuhoff v. Walgreen Co. et al., Case No. 4:20-cv-2439, is a wage and hour class action that was filed on behalf of a subset of the class in this action (employees of defendants' distribution centers who carried radios) in Marin County Superior Court in January 2020, and which was removed to the Northern District of California in April 2020.  Because these actions have also been brought as putative class actions, they do not "indicate[] that some of the interested parties have decided that individual action are an acceptable [or preferable] way to proceed."  See Zinser, 253 F.3d at 1191.

Plaintiff's case also predates the Whittington and Neuhoff actions by over a year.  (See Docket No. 1, Ex. 1.) Because those actions are also pending in federal court, involve the same defendants and putative class members, and involve the same issues, plaintiff's case has precedence over them under the "first-to-file" rule of judicial comity.  See Kohn Law Grp., Inc. v. Auto Parts Mfg. Miss., Inc., 787 F.3d 1237, 1239 (9th Cir. 2015) ("The first-to-file rule allows a district court to transfer, stay, or dismiss an action when a similar complaint has already been filed in another federal court."); Pacesetter Sys. v. Medtronic, Inc., 678 F.2d 93, 94-95 (9th Cir. 1982) ("There is a generally recognized doctrine of federal comity which permits a district court to decline jurisdiction over an action when a complaint involving the same parties and issues has already been filed in another district.")  Indeed, this court has already stayed the Whittington matter under the first-to-file rule

16

1    pending resolution of this case (see Whittington, No. 2:20-cv-

2    00600-WBS-CKD (Docket No. 11) (citing Kohn, 787 F.3d at 1239)),

3    and the parties in the Neuhoff matter appear to have filed a

4    stipulation to dismiss the plaintiff's claims without prejudice

5    in August 2020, (see Neuhoff, No. 4:20-cv-2439 (Docket No. 17)).

6    There is therefore little risk in this case that class

7    certification will "create one more action" that subjects

8    defendants to a multiplicity of litigation or risk of

9    inconsistent judgments.  Zinser, 253 F.3d at 1191.  Accordingly,

10   factor (B) also weighs in favor of certification.  See id.

11                 3.    Rule 23(c)(2) Notice Requirements

12         If the court certifies a class under Rule 23(b)(3), it

13   "must direct to class members the best notice that is practicable

14   under the circumstances, including individual notice to all

15   members who can be identified through reasonable effort."  Fed.

16   R. Civ. P. 23(c)(2)(B).  Actual notice is not required, but the

17   notice provided must be "reasonably certain to inform the absent

18   members of the plaintiff class."  Silber v. Mabon, 18 F.3d 1449,

19   1454 (9th Cir. 1994) (citation omitted).

20         The parties have jointly agreed to use CPT Group, Inc.

21   ("CPT") to serve as the Settlement Administrator.  (Bello Decl.,

22   Ex. 1, at 4.)  CPT has extensive experience in class action

23   matters, providing administration services in thousands of cases

24   since 1984 for cases in all courts in California and a number of

25   United States District Courts.  (Id., Ex. 2.)  Pursuant to the

26   notice plan, CPT will receive and process the class list data

27   within fifteen business days of the court's order granting

28   preliminary approval.  (Id., Ex. 1 at 11.)

1          "Notice is satisfactory if it 'generally describes the

2     terms of the settlement in sufficient detail to alert those with

3     adverse viewpoints to investigate and to come forward and be

4     heard.'"  See Churchill Vill., LLC v. Gen. Elec., 361 F.3d 566,

5     575 (9th Cir. 2004).  The notice will provide, among other

6     things, a description of the case; the total settlement amount

7     and how it will be allocated (including information about

8     plaintiff's motion for attorney's fees); the procedures for

9     opting out or objecting to the settlement; the individual class

10    member's share; and the procedures for disputing the number of

11    workweeks attributed to the class member under the settlement.

12    (Id.)  CPT will translate the notice from English to Spanish and

13    will provide both translations in its notice to class members.

14    (Id.)  All class members will receive individual notice by first

15    class mail.  (Id.)

16         The system set forth in the Settlement Agreement is

17    reasonably calculated to provide notice to class members and

18    inform class members of their options under the agreement.

19    Accordingly, the manner of notice and the content of notice is

20    sufficient to satisfy Rule 23(c)(2)(B).

21         B.   Rule 23(e): Fairness, Adequacy, and Reasonableness of
22              Proposed Settlement

23         Because the proposed class preliminarily satisfies the

24    requirements of Rule 23(a) and (b), the court must consider

25    whether the terms of the parties' settlement appear fair,

26    adequate, and reasonable.  See Fed. R. Civ. P. 23(e)(2).  To

27    determine the fairness, adequacy, and reasonableness of the

28    agreement, Rule 23(e) requires the court to consider four

1   factors: "(1) the class representatives and class counsel have

2   adequately represented the class; (2) the proposal was negotiated

3   at arm's length; (3) the relief provided for the class is

4   adequate; and (4) the proposal treats class members equitably

5   relative to each other." Id.  The Ninth Circuit has also

6   identified eight additional factors the court may consider, many

7   of which overlap substantially with Rule 23(e)'s four factors:

8           (1) The strength of the plaintiff's case; (2) the
            risk, expense, complexity, and likely duration of
9           further litigation; (3) the risk of maintaining class
            action status throughout the trial; (4) the amount
10          offered in settlement; (5) the extent of discovery
            completed and the stage of the proceedings; (6) the
11          experience and views of counsel; (7) the presence of a
            governmental participant; and (8) the reaction of the
12          class members to the proposed settlement.

13  See Staton, 327 F.3d at 959.

14
15          However, many of these factors cannot be considered

16  until the final fairness hearing.  Accordingly, the court's

17  review will be confined to resolving any "'glaring deficiencies'

18  in the settlement agreement."[1]  Syed, 2019 WL 1130469, at *7

19          [1]   Because claims under PAGA are "a type of qui tam
    action" in which an employee brings a claim as an agent or proxy
20  of the state's labor law enforcement agencies, the court will
    have to "review and approve" settlement of plaintiff's and other
21  class members' PAGA claims when the parties move for final
    approval of the Settlement Agreement.  See Cal. Lab. Code §
22  2669(k)(2); Sakkab v. Luxottica Retail N. Am., Inc., 803 F.3d
    425, 435-36 (9th Cir. 2015).
23          Though "[the] PAGA does not establish a standard for
    evaluating PAGA settlements," Rodriguez, 2019 WL 331159 at *4
24  (citing Smith v. H.F.D. No. 55, Inc., No. 2:15-CV-01293 KJM KJN,
    2018 WL 1899912, at *2 (E.D. Cal. Apr. 20, 2018)), a number of
25  district courts have applied the eight Staton factors, listed
    above, to evaluate PAGA settlements.  See, e.g., Smith, 2018 WL
26  1899912, at *2; Ramirez, 2017 WL 3670794, at *3; O'Connor v. Uber
    Techs., 201 F. Supp. 3d 1110, 1134 (N.D. Cal. 2016).  "Many of
27  these factors are not unique to class action lawsuits and bear on
28

                                      19

1   (citations omitted).

2          1.   Adequate Representation

3          The court must first consider whether "the class

4   representatives and class counsel have adequately represented the

5   class."  Fed. R. Civ. P. 23(e)(2)(A).  This analysis is

6   "redundant of the requirements of Rule 23(a)(4) . . . ."  Hudson

7   v. Libre Tech., Inc., No. 3:18-cv-1371-GPC-KSC, 2020 WL 2467060,

8   at *5 (S.D. Cal. May 13, 2020) (quoting Rubenstein, 4 Newberg on

9   Class Actions § 13:48 (5th ed.)) see also In re GSE Bonds

10  Antitrust Litig., 414 F. Supp. 3d 686, 701 (S.D.N.Y. 2019)

11  (noting similarity of inquiry under Rule 23(a)(4) and Rule

12  23(e)(2)(A)).

13         Because the Court has found that the proposed class

14  satisfies Rule 23(a)(4) for purposes of class certification, the

15  adequacy factor under Rule 23(e)(2)(A) is also met.  See Hudson,

16  2020 WL 2467060, at *5.

17         2.   Negotiations of the Settlement Agreement

18         Counsel for both sides appear to have diligently

19  pursued settlement after thoughtfully considering the strength of

20  their arguments and potential defenses.  The parties participated

21  in an arms-length mediation before an experienced employment

22  litigation mediator, Lynne Frank, Esq., on December 5, 2019.

23

24  whether a settlement is fair and has been reached through an
    adequate adversarial process."  See Ramirez, 2017 WL 3670794, at

25  *3.  Thus, the court finds that these factors will also govern
    its review of the PAGA settlement.  See id.  As noted above,

26  because some of these factors cannot be evaluated until the final
    fairness hearing, the court will limit its review of the PAGA

27  settlement on preliminary approval to determining whether there
    are any "'glaring deficiencies' in the settlement agreement."

28  See Syed, 2019 WL 1130469, at *7 (citations omitted).

                                    20

(Bello Decl. ¶ 7.)   Though the case did not settle on the date of mediation, the parties continued with informal settlement negotiations before reaching an agreement in principle in March 2020 and executing a long-form settlement agreement in July 2020. (Id. ¶ 7, Ex. 1.)   Given the sophistication and experience of plaintiff's counsel, and the parties' representation that the settlement reached was the product of arms-length bargaining, the court does not question that the proposed settlement is in the best interest of the class.   See Fraley v. Facebook, Inc., 966 F. Supp. 2d 939, 942 (N.D. Cal. 2013) (holding that a settlement reached after informed negotiations "is entitled to a degree of deference as the private consensual decision of the parties" (citing Hanlon, 150 F.3d at 1027)).

### 3.   Adequate Relief

In determining whether a settlement agreement provides adequate relief for the class, the court must "take into account (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any [other] agreement[s]" made in connection with the proposal.   See Fed. R. Civ. P. 23(e)(2)(C); Baker v. SeaWorld Entm't, Inc., No. 14-cv-02129-MMA-AGS, 2020 WL 4260712, at *6-8 (S.D. Cal. Jul. 24, 2020).

Here, plaintiff's counsel estimates that class members who do not opt out will receive approximately $1,210.34 for their claims under the California Labor Code.   (Bello Decl. ¶ 34.) Because this amount is based on the number of workweeks each

21

class member worked during the period covered by the Settlement

Agreement, the court finds that it is an effective method of

distributing relief to the class.

The Settlement Agreement also sets aside $150,000 of

the common fund for civil penalties under the PAGA, $37,500 of

which will be distributed evenly among class members who do not

opt out.  (See Settlement Agreement at 16.)  While plaintiff's

counsel estimates that plaintiff's Labor Code claims could be

worth up to $20,109,580 and that the PAGA claim could be worth up

to an additional $16,059,468, counsel recognizes that defendants

had legitimate defenses to these claims that risked reducing the

amount plaintiff and the class could recover at trial, including

that (1) defendants' rounding policies were neutral on their face

and thus could have resulted in additional time recorded for

employees on some occasions, (2) that their security checks were

not in place during the entire relevant period, and (3) that the

checks did not always require employees to stand in line for

substantial periods of time, among other defenses.  (See Bello

Decl. ¶ 32-33.)  Because the amount of penalties plaintiff would

be entitled to under the PAGA depends on how many violations of

the California Labor Code defendants committed, these defenses

also potentially apply to plaintiff's PAGA claim.  (See id.)

Plaintiff's counsel represents that, given the strength

of plaintiff's claims and defendants' potential exposure, the

settlement and resulting distribution provides a strong result

for the class.  (Id. ¶ 11-34.)  The amount of the gross

settlement, $4,500,000, represents approximately 22% of the

potential damages (not including PAGA penalties) in this matter.

22

1  (Id. ¶ 32.)  Based on his experience, plaintiff's counsel asserts

2  that settlement was in the best interest of the class, given the

3  strength of defendants' defenses, volatility in this area of the

4  law, and the possibility of receiving nothing had the court

5  agreed with defendants' positions.  (See id.)  There also does

6  not appear to be any "glaring deficiency" in the amount of the

7  common settlement fund reserved for PAGA penalties, see Syed,

8  2019 WL 1130469, at *7 (citations omitted), as courts frequently

9  approve settlements in wage and hour class action and PAGA

10  actions that minimize the total amount of the settlement that is

11  paid to PAGA penalties in order to maximize payments to class

12  members.  See, e.g., Nen Thio v. Genji, LLC, 14 F. Supp. 3d 1324,

13  1330 (N.D. Cal. 2014) (preliminarily approving $10,000 in PAGA

14  penalties out of a total settlement amount of $1,250,000); Garcia

15  v. Gordon Trucking, Inc., No. 1:10-cv-0324 AWI SKO, 2012 WL

16  5364575 (E.D. Cal. Oct. 31, 2012) (granting final approval of

17  $10,000 in PAGA penalties out of a total settlement amount of

18  $3,700,000).

19        Thus, while the settlement amount represents "more than

20  the defendants feel those individuals are entitled to" and will

21  potentially be "less than what some class members feel they

22  deserve," the settlement offers class members the prospect of

23  some recovery, instead of none at all.  See Officers for Justice

24  v. Civil Serv. Comm'n, 688 F.2d 615, 628 (9th Cir. 1982).

25        The Settlement Agreement further provides for an award

26  of attorney's fees totaling 33% of the $4,500,000 gross

27  settlement amount.  (See Settlement Agreement at 16.)  If a

28  negotiated class action settlement includes an award of

23

attorney's fees, then the court "ha[s] an independent obligation
to ensure that the award, like the settlement itself, is
reasonable, even if the parties have already agreed to an
amount."  In re Bluetooth Headset Prods. Liab. Litig., 654 F.3d
935, 941 (9th Cir. 2011).

"Under the 'common fund' doctrine, 'a litigant or a
lawyer who recovers a common fund for the benefit of persons
other than himself or his client is entitled to a reasonable
attorney's fee from the fund as a whole.'"  Staton, 327 F.3d at
969 (quoting Boeing Co. v. Van Gemert, 444 U.S. 472, 478 (1980)).
The Ninth Circuit has recognized two different methods for
calculating reasonable attorney's fees in common fund cases: the
lodestar method or the percentage-of-recovery method.  Id. at
941-42.  In the lodestar method, courts multiply the number of
hours the prevailing party expended on the litigation by a
reasonable hourly rate.  Id.  Under the percentage-of-recovery
method, courts typically delineate 25% of the total settlement as
the fee.  Hanlon, 150 F.3d at 1029.  However, courts may adjust
this figure if the record reflects "special circumstances
justifying a departure."  Bluetooth, 654 F.3d at 942.  Where, as
here, the settlement has produced a common fund for the benefit
of the entire class, courts have discretion to use either method.
Id. at 942 (citing In re Mercury Interactive Corp., 618 F.3d 988,
992 (9th Cir. 2010)).

Plaintiff's counsel have represented that, despite the
Settlement Agreement authorizing them to seek up to 33% of the
common fund in attorney's fees, they will seek fees totaling 25%
of the common fund by filing a separate motion for attorney's

1   fees and costs pursuant to Federal Rule 23(h).  (Mot. for Prelim.

2   Approval at 19.)   The court will defer consideration of the

3   reasonableness of counsel's fees until the fee motion is filed.

4   Class counsel is cautioned that the reasons for the attorney's

5   fees should be explained further in that motion.  Factors

6   considered in examining the reasonableness of the fee may

7   include: (1) whether the results achieved were exceptional; (2)

8   risks of litigation; (3) non-monetary benefits conferred by the

9   litigation; (4) customary fees for similar cases; (5) the

10  contingent nature of the fee and financial burden carried by

11  counsel; and (6) the lawyer's "reasonable expectations, which are

12  based on the circumstances of the case and the range of fee

13  awards out of common funds of comparable size."  See Vizcaino v.

14  Microsoft Corp., 290 F.3d 1043, 1048-50 (9th Cir. 2002).  A

15  lodestar cross-check, including the hours worked by each

16  attorney, paralegal, and case manager multiplied by their hourly

17  rate, is also a valuable means by which to check the

18  reasonableness of requested fees.  In the event that class

19  counsel cannot demonstrate the reasonableness of the requested

20  attorney's fee, the court will be required to reduce the fee to a

21  reasonable amount or deny final approval of the settlement.  See

22  id. at 1047.

23          In light of the claims at issue, defendants' potential

24  exposure, the risk to plaintiff and to the class of proceeding to

25  trial, and the fact that the court will separately assess the

26  reasonableness of plaintiff's request for attorney's fees at a

27  later date, the court finds that the substance of the settlement

28  is fair to class members and thereby "falls within the range of

25

1  possible approval," both for plaintiff's California Labor Code

2  claims and his PAGA claim.  <u>See</u> <u>Tableware</u>, 484 F. Supp. 2d at

3  1079; <u>Ramirez</u>, 2017 WL 3670794, at *3.  Counsel has not directed

4  the court to any other relevant agreements that would alter this

5  analysis.  The court therefore finds that Rule 23(e)'s third

6  factor is satisfied.  <u>See</u> Fed. R. Civ. P. 23(e)(C).

7              4.   <u>Equitable Treatment of Class Members</u>

8              Finally, the court must consider whether the Settlement

9  Agreement "treats class members equitably relative to each

10 other."  <u>See</u> Fed. R. Civ. P. 23(e)(2)(D).  In doing so, the Court

11 determines whether the settlement "improperly grant[s]

12 preferential treatment to class representatives or segments of

13 the class."  <u>Hudson</u>, 2020 WL 2467060, at *9 (quoting <u>Tableware</u>,

14 484 F. Supp. at 1079.

15             Here, the Settlement Agreement does not improperly

16 discriminate between any segments of the class, as all class

17 members are entitled to monetary relief based on the number of

18 compensable workweeks they spent working for defendants.  <u>See</u> <u>id.</u>

19 While the Settlement Agreement allows plaintiff to seek an

20 incentive award of $7,500, plaintiff will have to submit

21 additional evidence documenting his time and effort spent on this

22 case to ensure that his additional compensation above other class

23 members is justified.  <u>See</u> <u>Hudson</u>, 2020 WL 2467060, at *9.  The

24 court will retain the discretion to award less than the requested

25 $7,500 if it finds that such an award is not warranted by

26 plaintiff's submission.  <u>See</u> <u>Willner v. Manpower Inc.</u>, No. 11-CV-

27 02846-JST, 2015 WL 3863625, at *9 (N.D. Cal. June 22, 2015)

28 (reducing $11,000 service award to $7,500).  The court therefore

1  finds that the Settlement Agreement treats class members

2  equitably.  <u>See</u> Fed. R. Civ. P. 23(e)(D).

3           5.  <u>Remaining Staton Factors</u>

4           In addition to the <u>Staton</u> factors already considered as

5  part of the court's analysis under Rule 23(e)(A)-(D), the court

6  must also take into account "the extent of the discovery

7  completed . . . the presence of government participation, and the

8  reaction of class members to the proposed settlement." <u>Staton</u>,

9  327 F.3d at 959.

10          Though the parties only engaged in informal discovery

11 prior to engaging in mediation in December 2019, defendants

12 provided a substantial amount of information that appears to have

13 allowed the parties to adequately assess the value of plaintiff's

14 and the class' claims.  (<u>See</u> Bello Decl.)  Defendants provided

15 the electronic daily timecard data for 2,088 class members from

16 November 2018 through November 2018, consisting of approximately

17 1,024,383 shifts of data.  (Mot. for Prelim. Approval at 3; Bello

18 Decl. ¶ 6.)  Defendants also provided additional data such as the

19 number of class members, workweeks, pay periods, average rate of

20 pay, and copies of defendants' relevant written policies.  (Bello

21 Decl. ¶ 6.)  For his part, plaintiff retained an expert to assist

22 in evaluating the data to prepare a damages evaluation for

23 mediation and potentially for subsequent litigation.  (<u>Id.</u>)  This

24 factor weighs in favor of preliminary settlement approval.

25          The seventh <u>Staton</u> factor, pertaining to government

26 participation, also weighs in favor of approval.  <u>Staton</u>, 327

27 F.3d at 959.  Under the PAGA, "[t]he proposed settlement [must

28 be] submitted to the [LWDA] at the same time that it is submitted

27

1  to the court." Cal. Lab. Code § 2669(k)(2). Here, plaintiff

2  provided a copy of the proposed settlement agreement to the LWDA

3  on October 26, 2020, concurrently with the filing of his Motion

4  for Preliminary Approval. (Bello Decl. ¶ 41.) As of the date of

5  this order, the LWDA has not sought to intervene or otherwise

6  objected to the PAGA settlement. The court will continue to

7  monitor LWDA's involvement until the final fairness hearing.

8          The eighth <u>Staton</u> factor, the reaction of the class

9  members to the proposed settlement, is not relevant at this time

10 because class members have not yet received notice of the

11 settlement. <u>See</u> <u>Staton</u>, 327 F.3d at 959.

12         The court therefore finds that the remaining <u>Staton</u>

13 factors weigh in favor of preliminary approval of the Settlement

14 Agreement. <u>See</u> <u>Ramirez</u>, 2017 WL 3670794, at *3.

15         In sum, the four factors that the court must evaluate

16 under Rule 23(e) and the eight <u>Staton</u> factors, taken as a whole,

17 appear to weigh in favor of the settlement. The court will

18 therefore grant preliminary approval of the Settlement Agreement.

19     C.   <u>Rule 23(e) Notice Requirements</u>

20         Under Rule 23(e)(1)(B), "the court must direct notice

21 in a reasonable manner to all class members who would be bound

22 by" a proposed settlement. Fed. R. Civ. P. 23(e)(1)(B). While

23 there are "no rigid rules to determine whether a settlement

24 notice to class members satisfies constitutional and Rule 23(e)

25 requirements," <u>Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.</u>, 396

26 F.3d 96, 114 (2d Cir. 2005), notice of settlement--like any form

27 of notice--must comply with due process requirements under the

28 Constitution. <u>See</u> Rubenstein, 4 <u>Newberg on Class Actions</u> § 8:15

1  (5th ed.).  That is, the notice must be "reasonably calculated,

2  under all the circumstances, to apprise interested parties of the

3  pendency of the action and afford them an opportunity to present

4  their objections."  Mullane v. Cent. Hanover Bank & Tr. Co., 339

5  U.S. 306, 314 (1950).  While actual notice is not required, the

6  notice provided must be "reasonably certain to inform the absent

7  members of the plaintiff class."  Silber, 18 F.3d at 1454

8  (citation omitted).

9        For the reasons provided above in the court's

10  discussion of notice under Rule 23(c)(2), the court finds that

11  the Agreement's system for providing notice of the settlement is

12  reasonably calculated to provide notice to class members and

13  inform class members of their options under the agreement.

14  Accordingly, the manner of notice and the content of notice is

15  sufficient to satisfy Rule 23(e).

16        IT IS THEREFORE ORDERED that plaintiff's motion for

17  preliminary certification of a conditional settlement class and

18  preliminary approval of the class action settlement (Docket No.

19  21) be, and the same hereby is, GRANTED.

20        IT IS FURTHER ORDERED THAT:

21      (1) the following class be provisionally certified for the

22  purpose of settlement: all current and former non-exempt

23  employees who worked at any of defendants' distribution centers

24  at any time between November 6, 2014, and June 2, 2020, and who

25  do not opt out of the settlement;

26      (2) the proposed settlement is preliminarily approved as

27  fair, just, reasonable, and adequate to the members of the

28  settlement class, subject to further consideration at the final

29

1    fairness hearing after distribution of notice to members of the

2    settlement class;

3       (3) for purposes of carrying out the terms of the settlement

4    only:

5          (a) Lucas Mejia is appointed as the representative of

6    the settlement class and is provisionally found to be an adequate

7    representative within the meaning of Federal Rule of Civil

8    Procedure 23;

9          (b) the law firm of Lavi & Ebrahimian, LLP and the Law

10   Offices of Sahag Majarian II are provisionally found to be fair

11   and adequate representatives of the settlement class and are

12   appointed as class counsel for the purposes of representing the

13   settlement class conditionally certified in this Order;

14      (4) CPT Group, Inc. is appointed as the settlement

15   administrator;

16      (5) the form and content of the proposed Notice of Class

17   Action Settlement (Bello Decl., Ex. 1) is approved, except to the

18   extent that it must be updated to reflect dates and deadlines

19   specified in this Order and to reflect the fact that the final

20   fairness hearing will occur over Zoom;

21      (6) no later than fifteen (15) business days from the date

22   this Order is signed, defendants' counsel shall provide the names

23   and contact information of all settlement class members to CPT

24   Group, Inc.;

25      (7) no later than fourteen (14) calendar days from the date

26   defendants submit the contact information to CPT Group, Inc., it

27   shall mail a Notice of Class Action Settlement to all members of

28   the settlement class;

1    (8) no later than sixty (60) days from the date this Order

2    is signed, any member of the settlement class who intends to

3    dispute the number of compensable workweeks listed in his or her

4    Notice, or otherwise object to, comment upon, or opt out of the

5    settlement shall mail written notice of that intent to CPT Group,

6    Inc. pursuant to the instructions in the Notice of Class Action

7    Settlement;

8    (9) a final fairness hearing shall be held before this court

9    on Monday, March 22, 2021, at 1:30 p.m. in Courtroom 5 of the

10   Robert T. Matsui United States Courthouse, 501 I Street,

11   Sacramento, California, to determine whether the proposed

12   settlement is fair, reasonable, and adequate and should be

13   approved by this court; to determine whether the settlement

14   class's claims should be dismissed with prejudice and judgment

15   entered upon final approval of the settlement; to determine

16   whether final class certification is appropriate; and to consider

17   class counsel's applications for attorney's fees, costs, and an

18   incentive award to plaintiff.  The parties shall update the

19   proposed Notice of Class Action Settlement to inform class

20   members that the final fairness hearing will take place over

21   Zoom.  The Notice shall instruct any person who is interested in

22   attending the hearing to contact plaintiff's counsel no later

23   than ninety (90) days from the date this Order is signed to

24   obtain instructions for gaining access via Zoom.  The courtroom

25   deputy shall provide plaintiff's counsel with these instructions

26   no later than March 17, 2021.  Plaintiff's counsel shall, in

27   turn, provide the instructions to persons who have expressed

28   interest in attending no later than March 18, 2021.  The court

1  may continue the final fairness hearing without further notice to
2  the members of the class;

3      (10) no later than twenty-eight (28) days before the final
4  fairness hearing, class counsel shall file with this court a
5  petition for an award of attorney's fees and costs.  Any
6  objections or responses to the petition shall be filed no later
7  than fourteen (14) days before the final fairness hearing.  Class
8  counsel may file a reply to any objections no later than seven
9  (7) days before the final fairness hearing;

10     (11) no later than twenty-eight (28) days before the final
11 fairness hearing, class counsel shall file and serve upon the
12 court and defendants' counsel all papers in support of the
13 settlement, the incentive award for the class representative, and
14 any award for attorney's fees and costs;

15     (12) no later than twenty-eight (28) days before the final
16 fairness hearing, CPT Group, Inc. shall prepare, and class
17 counsel shall file and serve upon the court and defendants'
18 counsel, a declaration setting forth the services rendered, proof
19 of mailing, a list of all class members who have opted out of the
20 settlement, a list of all class members who have commented upon
21 or objected to the settlement;

22     (13) any person who has standing to object to the terms of
23 the proposed settlement may themselves appear at the final
24 fairness hearing or appear through counsel and be heard to the
25 extent allowed by the court in support of, or in opposition to,
26 (a) the fairness, reasonableness, and adequacy of the proposed
27 settlement, (b) the requested award of attorney's fees,
28 reimbursement of costs, and incentive award to the class

representative, and/or (c) the propriety of class certification. To be heard in opposition at the final fairness hearing, a person must, no later than ninety (90) days from the date this Order is signed, (a) serve by hand or through the mails written notice of his or her intention to appear, stating the name and case number of this action and each objection and the basis therefore, together with copies of any papers and briefs, upon class counsel and counsel for defendants, and (b) file said appearance, objections, papers, and briefs with the court, together with proof of service of all such documents upon counsel for the parties.

Responses to any such objections shall be served by hand or through the mails on the objectors, or on the objector's counsel if there is any, and filed with the court no later than fourteen (14) calendar days before the final fairness hearing. Objectors may file optional replies no later than seven (7) calendar days before the final fairness hearing in the same manner described above.  Any settlement class member who does not make his or her objection in the manner provided herein shall be deemed to have waived such objection and shall forever be foreclosed from objecting to the fairness or adequacy of the proposed settlement, the judgment entered, and the award of attorney's fees, costs, and an incentive award to the class representative unless otherwise ordered by the court;

(14) pending final determination of whether the settlement should be ultimately approved, the court preliminarily enjoins all class members (unless and until the class member has submitted a timely and valid request for exclusion) from filing

1   or prosecuting any claims, suits, or administrative proceedings

2   regarding claims to be released by the settlement.

3   Dated:   November 24, 2020

4   WILLIAM B. SHUBB
    UNITED STATES DISTRICT JUDGE

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

34