1   Joseph Lavi, Esq. (State Bar No. 209776)
    jlavi@lelawfirm.com
2   Jordan D. Bello, Esq. (State Bar No. 243190)
    jbello@lelawfirm.com
3   **LAVI & EBRAHIMIAN, LLP**
    8889 W. Olympic Blvd., Suite 200
4   Beverly Hills, California 90211
    Telephone: (310) 432-0000
5   Facsimile: (310) 432-0001

6   Sahag Majarian II, Esq. (State Bar No. 146621)
    sahagii@aol.com
7   **Law Offices of Sahag Majarian II**
    18250 Ventura Boulevard
8   Tarzana, California 91356
    Telephone: (818) 609-0807
    Facsimile: (818) 609-0892
9

10  Attorneys for PLAINTIFF
    LUCAS MEJIA on behalf of himself and others similarly
11  situated.

12

13                  **UNITED STATES DISTRICT COURT**

14                  **EASTERN DISTRICT OF CALIFORNIA**

15  LUCAS MEJIA on behalf of himself and others    Case No.: 2:19-CV-00218-WBS-AC
    similarly situated.
16                                                  **MEMORANDUM OF POINTS AND**
            PLAINTIFF,                              **AUTHORITIES IN SUPPORT OF**
17                                                  **PLAINTIFF'S MOTION FOR FINAL**
     vs.                                            **APPROVAL OF CLASS ACTION**
18                                                  **SETTLEMENT, ENHANCEMENT**
    WALGREEN CO., et al.,                           **AWARD, AND ATTORNEYS' FEES AND**
19                                                  **COSTS**
            DEFENDANTS.
20                                                  Date: March 22, 2021
                                                    Time: 1:30 p.m.
21                                                  Courtroom: 5

22                                                  Before Hon. William B. Shubb, United States
                                                    District Judge
23

24

25

26

27

28

                    **MEMORANDUM OF POINTS AND AUTHORITIES**

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................ 1

II.   BACKGROUND ................................................................................. 1

    A.  The Parties and Claims.................................................................. 1

    B.  The Mediation, Exchange of Directly Relevant Informal Discovery, and Legal Analysis By Parties' Counsel ..................................................... 2

    C.  Compliance with the Class Action Fairness Act and Private Attorneys General Act Notice Requirements ........................................... 3

    D.  Summary of Settlement ................................................................ 4

III.  CLASS NOTICE AND RESULTS OF THE NOTICE PROCEDURE ................... 6

IV.  THE COURT SHOULD GRANT FINAL APPROVAL ....................................... 6

    A.  The Legal Standard for Final Approval ......................................... 6

    B.  Each Factor Weights In Favor Of Approval .................................... 7

        1. The Court Should Weigh the Strength of Plaintiffs' Case Against the Risk, Expense, Complexity and Likely Duration of Further Litigation, the Risk of Maintaining Class Action Status Through Trial, and the Size of the Claims and Amount Offered to Settle Them ............................... 7

        2. The Settlement Was the Product of Informed Non-Collusive Negotiations and the Stage of the Proceedings Favor Settlement ................ 15

        3. The Experience and Supportive Views of Counsel Weigh in Favor of Final Approval .................................................................. 16

        4. The Presence of a Government Participant ....................................... 17

        5. The Reaction of the Class Favors Approval ..................................... 17

    C.  The Requested Attorneys' Fees And Costs Are Reasonable And Should Be Approved ....................................................................... 18

        1. Plaintiff's Fee Request is Reasonable Under the Lodestar Method .................. 18

           a.  Class Counsel's total hours are reasonable ........................... 20

           b.  A 3.25 multiplier is appropriate to account for the fair result in the action and to compensate plaintiff and his counsel for the contingent risk assumed by counsel and delay in receiving fees .......... 21

---

**MEMORANDUM OF POINTS AND AUTHORITIES**

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

2. Plaintiff's Costs Request is Reasonable ................................................................ 22

D.   The Requested Enhancement Award To Named Plaintiff Is Reasonable .................... 22

V.    CONCLUSION ....................................................................................................................... 24

## <u>TABLE OF AUTHORITIES</u>

**Pages**

### Cases

*AHMC Healthcare, Inc. v. Superior Court*,
    24 Cal.App.5th 1014 (2018) ....................................................................8

*In re Am. Bank Note Holographics, Inc.*,
    127 F. Supp. 2d 418 (S.D.N.Y. 2001) ....................................................17

*Anderson v. Nextel Retail Stores, LLC*,
    No. CV 07-4480, Dkt. 110 (C.D. Cal. June 30, 2010) ...........................20

*In re Art Materials Antitrust Litig.*,
    100 F.R.D. 367 (N.D. Ohio 1983) ..........................................................17

*Barrera v. Gamestop Corp.*,
    No. CV 09-1399 ODW, Dkt. 56 (C.D. Cal. Nov. 29, 2010) ...................20

*Bellinghausen v. Tractor Supply Co.*,
    306 F.R.D. 245 (N.D. Cal. 2015) ...........................................................22

*Boeing Co. v. Van Gemert*
    (1980) 444 U.S. 472 (1980) ....................................................................18

*Boyd v. Bechtel Corp.*,
    485 F.Supp. 610 (N.D. Cal. Aug. 22, 1979) ..........................................16

*Ceja-Corona v. CVS Pharm., Inc.*,
    2015 U.S. Dist. LEXIS 5118 (E.D. Cal. Jan. 14, 2015) .........................14

*Chu v. Wells Fargo Invs., LLC*,
    2011 U.S. Dist. LEXIS 15821 (N. D. Cal. Feb. 16, 2011) .....................14

*Cody v. Hillard*,
    88 F. Supp. 2d 1049 (D.S.D. Feb. 17, 2000) .........................................17

*Corbin v. Time Warner Entertainment-Advance/Newhouse Partnership*,
    821 F.3d 1069 (9th Cir. 2016) ..................................................................8

*In re Dun & Bradstreet Credit Servs. Customer Litig.*,
    130 F.R.D. 366 (S.D. Ohio 1990) ...........................................................17

*Elliot v. Spherion Pac. Work, LLC*,
    572 F. Supp.2d. 1169 (C.D. Cal. 2008) ...................................................12

*Ellis v. Naval Air Rework Facility*,
    87 F.R.D. 15 (N.D. Cal. Feb. 7, 1980) ...................................................16

---

**MEMORANDUM OF POINTS AND AUTHORITIES**

iv

*Ferra v. Loews Hollywood Hotel, LLC,*
    40 Cal.App.5th 1239 (2019) ...........................................................................8

*Fisher Bros. v. Cambridge Lee Industries, Inc.,*
    630 F.Supp. 482 (E.D. Pa. Oct. 2, 1985).........................................................16

*Franco v. Ruiz Food Prods.,*
    2012 U.S. Dist. LEXIS 169057 (E.D. Cal. Nov. 27, 2012) ...............................14

*Franklin v. Kaypro Corp.,*
    884 F.2d 1222 (9th Cir. 1989).........................................................................6

*Garcia v. Gordon Trucking, Inc.,*
    2012 U.S. Dist. LEXIS 160052 (E.D. Cal. Oct. 31, 2012) ................................14

*Glass v. USB Fin. Servs.,*
    No. C-06-4068 MMC, 2007 U.S. Dist. LEXIS 8476 (N.D. Cal. Jan. 26, 2007) ..........18, 22

*Maldonado v. Epsilon Plastics, Inc.,*
    22 Cal.App.5th 1308 (2018) .........................................................................11

*Mandujano v. Basic Vegetable Prods., Inc.,*
    541 F.2d 832 (9th Cir. 1976)..........................................................................17

*Naranjo v. Spectrum Security Services, Inc.,*
    40 Cal.App.5th 444 (2019) ......................................................................12, 13

*Nen Thio v. Genji, LLC,*
    14 F. Supp. 3d 1324 (N.D. Cal. Aug. 7, 2014)................................................14

*New York Gaslight Club, Inc. v. Carey,*
    447 U.S. 54 (1980)........................................................................................20

*Officers for Justice v. Civil Serv. Comm'n,*
    688 F. 2d 615 (9th Cir. 1982)..........................................................................6

*In re Omnivision Techs., Inc.,*
    559 F.Supp.2d 1036 (N.D. Cal. Dec. 6, 2007) ................................................18

*Ross v. U.S. Bank Nat. Ass'n,*
    No. C 07-02951 SI, 2010 U.S. Dist. LEXIS 107857 (N.D. Cal. Sept. 29, 2010) ...............23

*Satchell v. Fed. Exp. Corp.,*
    No. C03-2659 SI, 2007 U.S. Dist. LEXIS 99066, at *44 (N.D. Cal. Apr. 13, 2007) ..........15

*Staton v. Boeing Co.,*
    327 F.3d 938 (9th Cir. 2003)..............................................................7, 18, 22

*Troester v. Starbucks Corp.,*

**MEMORANDUM OF POINTS AND AUTHORITIES**

v

5 Cal.5th 829 (2018) ...................................................................................... 9

*Van Vranken v. Atl. Richfield Co.,*
    901 F. Supp. 294 (N.D. Cal. 1995) ...................................................... 23

*Vizcaino v. Microsoft Corp.,*
    290 F.3d 1043 (9th Cir. 2002) .............................................................. 18

*Wininger v. SI Mgmt. L.P.,*
    301 F.3d 1115 (9th Cir. 2002) .............................................................. 18

*York v. Starbucks Corp.,*
    2009 WL 8617536 (C.D. Cal. Dec. 3, 2009) ...................................... 12

**Statutes and Rules**

Cal. Civ. Code
    § 1500 et seq. ................................................................................... 1, 5

Cal. Labor Code
    § 2698, et seq. ...................................................................................... 2
    § 2699, subd. (l)(3) ............................................................................. 4

U.S.C.
    28 U.S.C. § 1715 ................................................................................ 17
    28 U.S.C. § 1715(b) ............................................................................. 3
    28 U.S.C. § 1715(d) ............................................................................. 3

---

**MEMORANDUM OF POINTS AND AUTHORITIES**

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

Plaintiff Lucas Mejia ("Plaintiff") respectfully submits this memorandum in support of his motion for final approval of the proposed class action settlement with Defendants Walgreen Co. and Walgreen Co./Ill. (hereinafter collectively referred to as "Defendants"). On November 24, 2021, with an order of clarification on December 10, 2021 (ECF No. 27), this Court granted preliminary approval of the Parties' $4,500,000 non-reversionary and "no claims made" class action settlement on behalf of 2,672 potential Class Members. (ECF No. 24.)

On December 31, 2020, CPT Group, Inc., the settlement administrator, mailed the class notice packet to the 2,672 potential Class Members. (Bello Decl. Ex. 2 ¶7 (CPT representative Daniel P. La).) The Class Members have until March 1, 2021 to respond to the class notice. (ECF No. 27.) With a week remaining for the Class Members to respond, the administrator has received one request for exclusion from Wesley Bishop and no objections. (*Id.* Ex. 2 ¶¶ 11-12.) At present, Plaintiff estimates the average gross payment amount to be $1,205.24 and the highest gross payment amount to be $3,073.59. (*Id.* Ex. 2 ¶ 14.)

The distribution to the Class Members is to all participating Class Members pro rata based on the number of work weeks each class member worked during the class period. (Bello Decl. Ex. 1 pp. 14:14-23, 2:5-6.) Class Members were not required to submit claims to receive their share and the settlement is non-reversionary in that any funds remaining from uncashed checks will be sent to the State Controller in the Class Members' name as unclaimed property pursuant to the Unclaimed Property Law, California Civil Code section 1500 et seq. (Bello Dec. Ex. 1 p. 15:6-10.)

Plaintiff asserts that the settlement should be approved because it is fair, adequate, and reasonable. It will result in fair payments to Class Members, it is non-collusive, and was achieved as a result of informed litigation and arm's-length negotiations conducted by counsel experienced in class action litigation with assistance of an experienced and well-regarded mediator, Lynn Frank, Esq.

## II. BACKGROUND

### A. The Parties and Claims

Defendants operate a nationwide pharmacy retail store chain. Plaintiff worked for Defendants from approximately 2010 to December 2017 as an hourly stocker at a Walgreens distribution center. (Mejia Decl. ¶2.) There were 2,672 potential Class Members, hourly employees working at

Defendants' California distribution centers during the Class Period. (Bello Decl. Ex. 2 ¶5.)

On November 6, 2018, Plaintiff filed this class action in the Superior Court for the County of Yolo alleging: Defendants failed to pay wages to employees at the applicable minimum wage or overtime rate for all hours worked, failed to provide legally compliant meal periods to employees, failed to provide rest periods, failed to provide complete and accurate wage statements in violation of California Labor Code section 226, and failed to timely pay final wages to employees after separation of employment. (ECF No. 1-1.) Plaintiff filed a first amended complaint on January 18, 2019 adding a cause of action for civil penalties pursuant to the Private Attorneys General Act of 2004, Lab. Code §2698, et seq. ("PAGA") based on the foregoing alleged misconduct. (ECF No. 1-6.)

On or about February 4, 2019, Defendants removed the matter to the U.S. District Court for the Eastern District of California. (ECF No. 1.) Defendants deny the allegations and contend that Defendants properly and timely compensated employees with all legally required wages, provided employees with legally compliant meal and rest periods, and provided employees with legally compliant wage statements.

**B.    The Mediation, Exchange of Directly Relevant Informal Discovery, and Legal Analysis By Parties' Counsel**

In January 2019, Plaintiff served Defendants with interrogatories and requests for production of documents. However, Defendant's removal of the action resulted in the state court discovery being withdrawn until formal federal discovery could be served following a Rule 26 conference. Prior to the Rule 26 conference, the Parties agreed Defendants would provide directly relevant class information and data and policy information and the Parties would privately mediate the matter. Prior to the mediation, Defendants provided the electronic daily timecard data for 2,088 class members from November 2014 through November 2018, consisting of approximately 1,024,383 shifts of data. Defendants also provided additional data like, *inter alia*, number of class members, workweeks, pay periods, average rate of pay. Defendants also provided relevant written policies including, *inter alia*, policies on recording work time/clocking in and out, rounding, meal periods and rest periods, security checks, and calculation of duration of meal breaks. Plaintiff retained an expert to assist in evaluation of the data for Plaintiff's damages evaluation for mediation and potentially further litigation if mediation was not successful.

On December 5, 2019, the Parties mediated with respected employment litigation mediator

Lynn Frank, Esq. The case did not settle at that time but the Parties continued further negotiations which resulted in settlement in principle in March 2020 and ultimately resulted in the long form settlement agreement for which Plaintiff now seeks preliminary approval.

Class Counsel represent that they have conducted a thorough investigation into the facts of this case and have diligently pursued an investigation of the Class Members' claims against Defendants, including research of the applicable law and the potential defenses and review of relevant documents and data, including time card data for the entire class during the class period.

Plaintiff and Class Counsel concluded, after taking into account the sharply disputed factual and legal issues involved in this action, the risks attending further prosecution, and the benefits to be received pursuant to the compromise and settlement of the action as set forth in this agreement, that settlement on the terms set forth herein is in the best interest of the representative Plaintiff and the Class Members and is fair and reasonable.

Defendants have concluded that there are benefits associated with settling this action. Defendants deny that Plaintiff would be able to establish entitlement to wages or penalties for any alleged unpaid wages for all hours worked, unpaid wages for meal or rest breaks which did not comply with the law, and penalties for wage statements which did not comply with the law and untimely payment of wages. After taking into account the sharply disputed factual and legal issues involved in the action, the expense and burden of protracted litigation, and the desire to put the controversy to rest, Defendants believe that settlement on the terms set forth in this agreement is in its best interests and is fair and reasonable.

## C. Compliance with the Class Action Fairness Act and Private Attorneys General Act Notice Requirements

CAFA requires that "[n]ot later than 10 days after a proposed settlement of a class action is filed in court, each defendant that is participating in the proposed settlement shall serve [notice of the proposed settlement] upon the appropriate State official of each State in which a class member resides and the appropriate Federal official[.]" See 28 U.S.C. § 1715(b). The court may not grant final approval of a class action settlement until the CAFA notice requirement is met. See 28 U.S.C. § 1715(d). Defendants timely provided CAFA notice and no Attorneys General have submitted statements of interest or objections in response to these notices. (ECF Nos. 25, 25-1; Bello Decl. ¶¶50-51.)

The PAGA provides that a proposed settlement shall be submitted to the LWDA when it is submitted to the court for review and approval. Cal. Lab. Code §2699, subd. (l)(3). On October 26, 2020, Plaintiff filed the settlement agreement with the LWDA through its online filing system and provided notice of the date, time, and location of the hearing on the motion for preliminary approval of class action settlement. (Bello Decl. ¶48.) On February 26, 2021, Plaintiff filed the settlement agreement with the LWDA through its online filing system and provided notice of the date, time, and location of the hearing on the motion for final approval of class action settlement. (Bello Decl. ¶49, Ex. 3.) Plaintiff's Counsel did not receive any communication or notice from the LWDA about the LWDA having any issues with the settlement and no representative of the LWDA appeared at the hearing on the motion for preliminary approval. (Bello Decl. ¶49.)

**D.      Summary of Settlement**

Subject to Court approval, the Parties have agreed to settle the lawsuit based on the terms and conditions set forth in the settlement agreement, a copy of which is attached to the Declaration of Jordan D. Bello as Exhibit "1".

A summary of the key terms of the Settlement is as follows:

1. <u>Class Definition</u>: For purposes of the settlement, "Class Members" is defined to include any current or former hourly non-exempt employees who worked at any of Defendants' California distribution centers at any time from November 6, 2014 to June 2, 2020. (Bello Dec. Ex. 1 pp. 1:11-13, 1:25-26.)

2. <u>Maximum Settlement Fund</u>: The maximum settlement payment by Defendants ("Maximum Settlement Fund") is $4,500,000. (*Id.* Ex. 1 p. 2:16-27.) This is a non-claims made and non-reversionary settlement which shall include: payment to Class Members, court approved Class Counsel Fees and Costs, an approved Class Representative Enhancement for his service as class representative, approved Settlement Administration Costs, and the PAGA Payment. (*Id.* Ex. 1 pp. 2:16-19.) Defendants shall separately pay their FICA/FUTA payments and employer side payroll taxes. (*Id.* Ex. 1 p. 2:25-27.)

3. <u>Class Counsel's Fees and Costs</u>: Pursuant to the settlement, Class Counsel can request a payment of up to $1,500,000, one-third of the settlement, for fees and up to $15,000 in costs. (*Id.* Ex. 1 pp. 16:1-7.) Class Counsel intends to seek 25 percent of the settlement, $1,125,000 in fees which is the benchmark in federal court for class actions.

4. <u>Class Representative Enhancement</u>: Plaintiff and Class Counsel will request a service award in the amount of $7,500 for Plaintiff as payment for his time, effort, and assumption of risk in pursuing the litigation. (*Id.* Ex. 1 p. 15:11-27.)

5. <u>Settlement Administration Costs</u>: The parties have agreed to retain CPT Group, Inc. as the "Settlement Administrator" and Plaintiff will request Settlement Administration Costs not to exceed the amount of $35,000. (*Id.* Ex. 1 p. 17:1-6.)

6. <u>PAGA Payment</u>: The Parties have agreed to allocate $150,000 to PAGA penalties with $112,500 be paid to the LWDA as 75% of the PAGA allocation and $37,500 to be distributed to the Class. (Bello Dec. Ex. 1 p. 16:21-27.)

7. <u>Net Settlement Amount</u>: After deducting approved attorneys' fees and costs, an approved Class Representative Enhancement, approved Settlement Administration Costs, PAGA Payment from the Maximum Settlement Fund; the remaining funds or "Net Settlement Amount" is to be distributed to all Class Members who do not opt out. (*Id.* Ex. 1 p. 3:1-3.) If all requested costs and fees are requested and approved, the Net Settlement Amount to pay Class Members and their taxes is estimated to be:

| | |
|---|---:|
| Maximum Settlement Fund | $4,500,000 |
| (Attorneys' Fees) | ($1,125,000) |
| (Attorneys' Costs) | ($11,362.77) |
| (Class Representative Enhancement) | ($7,500) |
| (Settlement Administration Costs) | ($22,000) |
| (75% PAGA Payment) | ($112,500) |
| Net Settlement Amount | $3,221,637.23 |

8. <u>Calculation of Individual Settlement Payment</u>: The Net Settlement Amount will be paid to all Class Members who do not exclude themselves pro rata based on the number of workweeks each Class Member worked for Defendants during the Class Period (i.e., "Compensable Workweeks") compared to the total Compensable Workweeks worked by all Class Members based on Defendants' records. (Bello Decl. Ex. 1 pp. 14:14-23, 2:5-6.) The Class Members will also be given the opportunity to dispute the number of workweeks attributed to them. (*Id.* Ex. 1 p. 12:9-17, Ex. 1 to Settlement Agreement p. 6 [class notice indicating the Class Member can dispute the number of workweeks allocated to them].) Payment to each Authorized Claimant shall be allocated as follows: Twenty percent (20%) of any settlement funds paid to any Class Member shall be treated as wages and will be reported on W2; Forty Percent (40%) shall be treated as interest and Forty percent (40%) of any settlement funds paid to any Class Member shall be treated as penalties reportable on IRS Form 1099. (*Id.* Ex. 1 p. 14:24-27.)

9. <u>No-Reversion Of Uncashed Funds</u>: All settlement payment checks to Class Members shall be valid for 180 days. Any settlement checks remaining uncashed 180 days after being issued shall be deemed null and void, with any unclaimed funds being remitted to the Controller of the State of California in the employee's name to be held pursuant to the Unclaimed Property Law, California Civil Code § 1500 et seq., for the benefit of those Class Members who did not cash their checks until such time that they claim their property. (Bello Dec. Ex. 1 p. 15:6-10.)

10. <u>Release Based on the Claims Alleged in the Operative Complaint</u>: The class release provides that upon disbursement of the settlement, Class Members who do not exclude themselves from the settlement release all "Released Claims" from November 6, 2014 to June 2, 2020, defined as follows:

"Released Claims" means any and all claims, debts, liabilities, demands, obligations, penalties, guarantees, costs, expenses, attorney's fees, damages, action or causes of action of whatever kind or nature, whether known or unknown, contingent or accrued, that are alleged, related to or that reasonably could have arisen out of the same facts alleged in the Action, including, but not limited to: (1) failure to pay minimum wages; (2) failure to pay overtime wages;

(3) failure to provide meal periods; (4) failure to authorize and permit rest periods; (5) failure to provide accurate itemized wage statements; (6) failure to timely pay all wages after separation of employment; (7) unlawful business practices in violation of Business and Professions Code section 17200 et seq.; and (8) PAGA penalties recoverable for any of the foregoing claims. This Release shall include, without limitation, claims that were raised, or that reasonably could have been raised, under the applicable Wage Orders and California Labor Code provisions based on the facts alleged in the Complaint for Labor Code §§ 201, 202, 203, 226, 226.7, 510, 512, 1194, 1197, 1198, and/or 2698 et seq., based on alleged violations of these Labor Code provisions. (*Id.* Ex. 1 p. 3:16-4:7.)

## III.    CLASS NOTICE AND RESULTS OF THE NOTICE PROCEDURE

On December 10, 2020, CPT Group received the class list and class data from Defendant for 2,672 potential Class Members. (Bello Decl. Ex. 2 ¶ 5.) After performing a national change of address database verification on the addresses and to obtain any new addresses, the administrator mailed notice packets to the 2,672 potential Class Members. (Bello Decl. Ex. 2 ¶¶ 6-7.)

As a result of the notice procedure, one Class Member, Wesley Bishop, has requested exclusion. (*Id.* Ex. 2 ¶12.)

CPT has not received any objections. (*Id.* Ex. 2 ¶ 11.)

At present, the estimated average settlement share for the 2,671 Class Members is approximately $1,205.24 with the highest recovery of approximately $3,073.59. (*Id.* Ex. 2 ¶ 14.)

## IV.    THE COURT SHOULD GRANT FINAL APPROVAL

### A.    The Legal Standard for Final Approval

Federal law strongly encourages settlements in the context of class actions. *See, e.g.*, *Franklin v. Kaypro Corp.*, 884 F.2d 1222, 1229 (9th Cir. 1989) ("overriding public interest in settling and quieting litigation" is "particularly true in class action suits"). When reviewing a motion for approval of a class settlement, the Court should give due regard to "what is otherwise a private consensual agreement negotiated between the parties," and must limit the inquiry "to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Officers for Justice v. Civil Serv. Comm'n*, 688 F. 2d 615, 625 (9th Cir. 1982).

Although Rule 23 provides no precise formula for making this determination, the Ninth

Circuit has identified several factors to be considered: (1) the strength of the case; (2) the size of the claims and amount offered to settle them; (3) the risk, expense, complexity and likely duration of further litigation; (4) the stage of the proceedings, i.e., whether the plaintiffs and their counsel have conducted sufficient discovery to make an informed decision on settlement; (5) whether the class has been fairly and adequately represented during settlement negotiations by experienced counsel; (6) the presence of a government participant, and (7) the reaction of the class to the proposed settlement. *See Staton v. Boeing Co.,* 327 F.3d 938, 960 (9th Cir. 2003) (noting that the relative importance of each of these factors will depend on the circumstances of the case). Here, all of the relevant factors weigh in favor of final approval.

### A. Each Factor Weighs In Favor Of Approval

#### 1. The Court Should Weigh the Strength of Plaintiffs' Case Against the Risk, Expense, Complexity and Likely Duration of Further Litigation, the Risk of Maintaining Class Action Status Through Trial, and the Size of the Claims and Amount Offered to Settle Them

To assist the Court with determining if the proposed settlement is within a range that is fair, reasonable, and adequate, Plaintiff's counsel analyzed the value of pleaded class allegations including consideration of the strength of Plaintiff's claims, risk of further litigation, and size of claims and amount offered to settle them.

Unpaid wages at minimum wage or overtime rate: Plaintiff alleged that Defendants failed to pay wages to distribution center employees for all hours worked (at either the applicable minimum wage rate or overtime rate) based on: (1) Defendants' mandatory security checks off the clock in place from January 20, 2016 to August 2, 2019 (Compton Decl. ¶5); and (2) improper rounding of work time in place until January 2020 (Compton Decl. ¶4). Based on the data provided related to Plaintiff's allegations of improper rounding, Plaintiff estimated a maximum of approximately $2,533,243 in unpaid wages due to the rounding where there were 75,713 hours unpaid compared to 3,910.50 hours overpaid from November 2014 to November 2018:

- 11,538 underpaid hours x $10.26 average min. wage over class period x 2 liquidated damages x 1.29 extrapolation factor[1] = $305,420

- 59,267 underpaid "regular" overtime hours x $19 average wage x 1.5 overtime rate x 1.29 extrapolation factor = $2,178,951

---

[1] 269 weeks of rounding during class period ÷ 208.5 weeks of data = 1.29 rounding extrapolation factor

- 997 underpaid "doubletime" hours x $19 average wage x 2 overtime rate x 1.29 = $48,872
- Total: $2,533,243

Plaintiff estimated approximately a maximum of $5,722,000 in PAGA civil penalties for unpaid wages from rounding during the PAGA period ([2,088 x $50 initial pay period] + [(58,264 pay periods during rounding practice PAGA SOL − 2,088) x $100 subsequent pay period penalty] = $5,722,000).

However, Defendants argued that its quarter hour rounding policy "is neutral on its face" because Defendants' policy "'rounds all employee time punches to the nearest quarter-hour without an eye towards whether the employer or the employee is benefitting from the rounding.'" *AHMC Healthcare, Inc. v. Superior Court*, 24 Cal.App.5th 1014, 1027 (2018) (quoting *Corbin v. Time Warner Entertainment-Advance/Newhouse Partnership,* 821 F.3d 1069, 1078–1079 (9th Cir. 2016)). Thus, Defendants argued that even if during a sampling of the rounding time period (e.g., the class period) some employees were underpaid, this is insufficient to establish that Defendants "systematically undercompensated employees" since Defendants argued rounding is determined in the long term and the rounding policy is neutral on its face. *See Ferra v. Loews Hollywood Hotel, LLC,* 40 Cal.App.5th 1239, 1253-1254 (2019), *review granted,* 2020 Cal. LEXIS 516 (Jan. 22, 2020) (S259172). In addition to its assertion that there was no liability at all, Defendants argued that it ceased using rounding in January 2020.

When taking into account Defendants' defenses to the rounding claims, Plaintiff would attribute an 80 percent success rate to the rounding claim which would reduce the estimated unpaid wages claim to $2,026,594 ($2,533,243 x .80 = $2,026,594) and the PAGA penalties to $4,577,600 in PAGA penalties ($5,722,000 x .25 = $4,577,600).

Plaintiff estimated approximately a maximum amount of unpaid wages of $2,168,391 due to the mandatory security check for distribution center employees over the class period (739,253 shifts in data x .083 hours per shift x $19 average rate x 1.5 overtime rate x 1.24 extrapolation factor[2] = $2,168,391). Plaintiff did not estimate any additional PAGA penalties to avoid "double dipping" civil penalties for failure pay wages already attributed to rounding during the overlapping time period.

---

[2] 184 weeks security practice used during class period ÷ 148 weeks of data security practice used = 1.24

In defense, Defendants first argued that the bag check practice was not in place during the entire class period and was limited to January 2016 to August 2019 (Compton Decl. ¶5). Defendants also argued that as a result of the litigation, Defendants observed the time it took for employees to go through the bag check at the distribution center and determined that there was generally no stoppage for the security check. Defendants argued that the security checks consisted of employees with bags just holding open their bag for the security check employees to quickly peek in the bag which was so brief that it took no time for the security check because employees essentially kept walking while security glanced in the bag. Thus, Defendants argued there was no liability because the security bag checks took no time. Defendants argued they would be able to produce employee declarations establishing that the bag checks did not add any time to employees entering or leaving the premises. In addition, Defendants argued that if Plaintiffs could establish the security check was at most a manner of seconds, this was still non-compensable de minimis time which was not barred by *Troester v. Starbucks Corp.*, 5 Cal.5th 829, 839 (2018) (finding that consistent practice resulting in unpaid minutes each day (rather than seconds) of unpaid wages was not de minimis).

When taking into account Defendants' defenses to the security check claims, Plaintiff would attribute an 80 percent success rate to the security check claim which would reduce the estimated unpaid wages claim to $1,734,712 ($2,168,391 x .80 = $1,734,712).

Meal Breaks: Plaintiff alleged that Defendants failed to provide legally compliant meal periods because Defendants' mandatory bag checks during meal periods when employees left the premises shortened meal periods to less than 30 minutes of meal period time or discouraged employees from leaving the premises in violation of California law. Based on the data provided by Defendants, Plaintiff estimated a maximum estimate of damages of approximately $16,650,676 in unpaid meal period premiums (706,735 shifts over five hours in data during security practice x $19 average rate x 1.24 extrapolation factor = $16,650,676). Plaintiff estimated an additional maximum of $5,343,461 in PAGA penalties for meal period security violations of ([2,088 initial pay periods x $50] + [([56,986 pay periods in data during security practice PAGA SOL x .956 meal incidence rate[3]] - 2,088) x $100 subsequent rate] = $5,343,461).

However, Defendants argued that they had legally compliant meal period policies in place

---

[3] 706,735 shifts over five hours in data during security practice ÷ 739,253 shifts in data during security practice = .956 incidence rate

which made clear that the employees are permitted to take full thirty minute meal breaks during which they are free of work duties and permitted to leave the premises and that any security screening time should not be included in a meal period. In addition, Defendants argued that security checks of employees during meal periods was even less likely to require employees to slow down when leaving or entering because of the small number of employees who left the premises during meal periods and that the bag check was so brief while employees walked out. Thus, Defendants argued that there was no liability because there was no time spent under Defendants' control during security checks. Defendants also asserted that that if any employee felt discouraged from leaving the premises for a meal, it was based on issues limited to that specific individual which could not be certified as a class. Defendants argued they would be able to produce declarations establishing that no time was spent under Defendants' control during security checks.

When taking into account Defendants' relatively strong defenses to the meal period claims, Plaintiff would attribute only a 25 percent success rate to the meal break claim which would reduce the estimated damages to $4,162,669 in unpaid meal period premiums ($16,650,676 x .25 = $4,162,669) and only $1,335,865 in PAGA penalties ($5,343,461 x .25 = $1,335,865).

Rest Breaks: Plaintiff alleged that at times during the class period Defendants' security screening reduced the time of the employees rest periods to less than 10 minutes in violation of California law and/or discouraged or prevented employees from leaving the premises during rest breaks. Plaintiff estimated the maximum penalties of approximately $16,995,076 in unpaid rest period premiums (721,353 shifts over 3.5 hours in data during security practice x $19 average rate x 1.24 extrapolation factor = $16,995,076). Plaintiff estimated an additional maximum of $5,451,735 in PAGA penalties for rest period security violations of ([2,088 initial pay periods x $50] + [([56,986 pay periods in data during security practice PAGA SOL x .975 rest incidence rate[4]] - 2,088) x $100 subsequent rate] = $5,451,735).

However, Defendants argued that they had legally compliant rest period policies in place which made clear that the employees are permitted to take full ten minute rest breaks during which they are free of work duties and permitted to leave the premises and that an employee should not include security bag check time in their rest period time. In addition, Defendants argued that

---

[4] 721,353 shifts over 3.5 hours in data during security practice ÷ 739,253 shifts in data during security practice = .975 incidence rate

security bag checks of employees during rest periods never required employees to slow down when leaving or entering because of the small number of employees who left the premises during rest periods. Thus, Defendants argued that there was no liability because there was no time spent under Defendants' control during security checks. Defendants argued if any employee felt discouraged from leaving the premises for a rest break, it was based on issues limited to that specific individual which could not be certified as a class. Defendants argued they would be able to produce declarations establishing that no time was spent under Defendants' control during security checks and that employees were free to leave the premises during rest periods.

When taking into account Defendants' relatively strong defenses to the rest period claims, Plaintiff would attribute only a 20 percent success rate to the rest break claim which would reduce the estimated damages to $4,248,769 in unpaid rest period premiums ($16,995,076 x .25 = $4,248,769) and only $1,362,933 in PAGA penalties ($5,451,735 x .25 = $1,362,933).

Wage Statement Penalties: Plaintiff argued that derivative of the aforementioned violations, Defendant failed to provide employees with complete and accurate wage statements reflecting hours worked, hours worked at each rate, and net and gross wages earned. Plaintiff estimated $7,381,380 in wage statement statutory penalties ([2,088 initial pay periods x $50] + [(58,264 pay periods during rounding practice penalty SOL – 2,088) x $100 subsequent rate] x 1.29 = $7,381,380). Plaintiff estimated approximately $14,566,000 in PAGA civil penalties for wage statement violations during the PAGA period (58,264 pay periods during rounding practice[5] x $250 = $14,566,000).

Because this claim was derivative, it was subject to the defenses to the claims alleged above. In addition, Defendants argued that California law only requires that the wage statements reflect what was actually paid to the employees and does not set forth a remedy derivative of what the Plaintiff alleges should have legally been paid. *See Maldonado v. Epsilon Plastics, Inc.*, 22 Cal.App.5th 1308, 1334-1335 (2018) (in evaluating whether an injury occurred based on inaccurate wage statements, court found that employer was to provide wage statements reflecting the amount of actual wages paid during the pay period). Defendants also argued that Plaintiff could not demonstrate that Defendants knowingly and intentionally provided employees with inaccurate wage

---

[5] Plaintiff used the rounding practice as the basis for wage statement penalties because it was the longest established practice during the class period.

statements as its rounding practice was facially neutral and applied in good faith and its security practices resulted in no time or de minimis time employees went through the bag check. Defendants also argued that meal and rest period wages are not required to be included in wage statements, an issue currently pending before the California Supreme Court. *Naranjo v. Spectrum Security Services, Inc.,* 40 Cal.App.5th 444 (2019) (*review granted,* 2020 Cal.LEXIS 167 (Jan. 2, 2020) (S258966)).

When taking into account Defendants' defenses to the wage statement claims, Plaintiff would attribute a 60 percent success rate to the wage statement claim derivative of the rounding claim/security check claims which would reduce the estimated wage statement claim to $4,428,828 ($7,381,380 x .60 = $4,428,828) and the PAGA penalties to $8,739,600 ($14,566,000 x .60 = $8,739,600).

Plaintiff also argued that Walgreen Co./Ill, listed as the employer on employees' wage statements violated Labor Code section 226, subd. (a)(8), because employees were actually employed by Walgreen Co. Plaintiffs did not estimate additional penalties for this allegation, because these penalties were already encompassed by the estimate for wage statement penalties provided above.

As a defense, Defendants alleged that on tax documents, Walgreen Co. identified itself as Walgreen Co./Ill which established that Walgreen Co. held itself out as Walgreen Co./Ill in official documents such that it was a properly named business entity which employed the workers in compliance with Labor Code section 226. Defendants argued that courts have held that a recognizable variant of an employer name satisfies the requirements of Labor Code section 226. *See e.g., Elliot v. Spherion Pac. Work, LLC*, 572 F. Supp.2d. 1169, 1179-80 (C.D. Cal. 2008) (finding truncated name of Spherion Pacific Work, LLC rather than complete name Spherion Pacific Workforce, LLC is legally compliant); *York v. Starbucks Corp.,* 2009 WL 8617536, at *8 (C.D. Cal. Dec. 3, 2009) (holding that use of a fictitious business name sufficient: "The Court is not persuaded that Defendants' use of 'Starbucks Coffee Company,' rather than their official corporate name or some close variant, constitutes a statutory violation.").

<u>Waiting Time Penalties</u>: Plaintiff alleged that derivative of the failure to pay wages for all hours worked, meal period and rest period premium wages, Defendants failed to timely pay

employees their unpaid wages following separation of employment. Plaintiff estimates $5,011,440 in waiting time penalties (approximately 1,099 formers during SOL x 30 days x 8 hours x $19 average per hour = $5,011,440). Plaintiff also estimated a maximum of $62,100 in PAGA civil penalties (approximately 621 formers during penalty SOL x $100 = $62,100).

Because this claim was derivative, it was subject to the defenses to the claims as set forth above. Defendants could argue that Plaintiff could not demonstrate that the Defendants failure to pay unpaid wages was willful. Defendants argued that as to the unpaid wages claims, that Defendants reliance on a facially neutral rounding policy and implementation of a security screening policy which required at most de minimis seconds of control was in good faith and eliminated any showing of willfulness. Defendants also argued that meal and rest period wages do not give rise to Labor Code section 203 derivative penalties, an issue currently pending before the California Supreme Court. *Naranjo v. Spectrum Security Services, Inc.,* 40 Cal.App.5th 444 (2019) (*review granted,* 2020 Cal.LEXIS 167 (Jan. 2, 2020) (S258966)).

When taking into account Defendants' defenses to the wage statement claims, Plaintiff would attribute a 70 percent success rate to the derivative claim based on the rounding claim/security check claims which would reduce the estimated Labor Code 203 claim to $3,508,008 ($5,011,440 x .70 = $3,508,008) and the PAGA penalties to $43,470 ($62,100 x .70 = $43,470).

When including evaluation of Defendants' defenses, Plaintiff's estimate of potential exposure without including PAGA would be approximately $20,109,580. The case settled for $4,500,000, which is approximately 22.377 percent of the potential damages not including PAGA in this matter. However, if Plaintiff continued litigating this matter, Class Members potentially could have received nothing if the Court had agreed with Defendants' positions especially in light of the volatility of this area of law, certification standards, and the aforementioned defenses. As such, Plaintiff's decision to settle this matter was in the best interest of the Class Members. The Class Settlement Amount is reasonable in light of the risks involved in this case—including the prospect of a potential adverse summary adjudication ruling, certification ruling, defenses to the case, potential appeal, and elements of willfulness, "knowing and intentional" failure to provide legally compliant wage statements and/or injury required for certain penalties.

When still considering the effect of Defendants' defenses, the PAGA penalties were

estimated to be an additional $16,059,468; however, in wage and hour class action and PAGA actions that settle, which are the majority of these cases, often very little of the total settlement is paid to PAGA penalties in order to maximize payments to class members. *See, e.g., Ceja-Corona v. CVS Pharm., Inc.*, 2015 U.S. Dist. LEXIS 5118, at *2-3 (E.D. Cal. Jan. 14, 2015) (preliminarily approving $10,000 in PAGA penalties out of a total settlement amount of $900,000), *report and recommendation adopted*, 2015 U.S. Dist. LEXIS 25730 (E.D. Cal. Mar. 3, 2015); *Nen Thio v. Genji, LLC*, 14 F. Supp. 3d 1324, 1330 (N.D. Cal. 2014) (preliminarily approving $10,000 in PAGA penalties out of a total settlement amount of $1,250,000); *Franco v. Ruiz Food Prods.*, 2012 U.S. Dist. LEXIS 169057, at *14 (E.D. Cal. Nov. 27, 2012) (granting final approval of $10,000 in PAGA penalties out of a total settlement amount of $2,500,000); *Garcia v. Gordon Trucking, Inc.*, 2012 U.S. Dist. LEXIS 160052, at *3 (E.D. Cal. Oct. 31, 2012) (granting final approval of $10,000 in PAGA penalties out of a total settlement amount of $3,700,000); *Chu v. Wells Fargo Invs., LLC*, 2011 U.S. Dist. LEXIS 15821, at *1 al. Feb. 16, 2011) (granting final approval of $10,000 in PAGA penalties out of a total settlement amount of $6,900,000). In these settlements, the parties generally maximize statutory penalties and minimize PAGA penalties. *See, e.g., Franco*, 2012 U.S. Dist. LEXIS 169057, at *2, *14 (approving a $10,000 PAGA award out of a total settlement amount of $2,500,000).

Plaintiff's Counsel is convinced that the proposed settlement is in the best interest of the class based on the negotiations and a detailed knowledge of the issues present in this action. The length and risks associated with a motion for summary adjudication or certification, trial, and other normal perils of litigation have impacted the value of the claims and were all weighed in reaching the proposed settlement. In addition, the affirmative defenses asserted by Defendant, the prospect of a potential adverse summary adjudication or certification ruling and pending cases before the California Supreme Court, uncertainty on certification issues, the difficulties of complex litigation, the lengthy process of establishing specific damages and various possible delays and appeals, were also carefully considered by Class Counsel in agreeing to the proposed settlement. In light of the above, the proposed Settlement is well within the "ballpark" of reasonableness and should be granted preliminary approval.

The proposed settlement benefits the class. Plaintiff estimated the class members will receive

an average payment of approximately $1,205.24 per employee. (Bello Decl. Ex. 2 ¶4.) The employees average $19 per hour and payment of an approximate equivalent to 63.43 hours of work for each class member ($1,205.24 ÷ $19 average rate per hour = 63.43 hours) should provide a benefit to the employees especially in light of Defendant's defenses to liability. In wage and hour cases, the actual unpaid amounts of wages are relatively small for each individual class member preventing many individuals from being able to find representation and also discourage employees from engaging in litigation over a relatively small sum. The settlement which will allow the employees to receive a portion of their unpaid wages without risk of retaliation or having to file their own action, find an attorney, participate in the action, or incur the risk of costs if the action is unsuccessful. Other substantial benefits also include that it distributes the amount to class members without the class members having to submit a claim form. In addition, funds for any settlement checks remaining uncashed after one hundred and eighty (180) days shall be sent to the State of California's Bureau of Unclaimed Property providing additional time for class members to claim unclaimed funds. The class members' release is also limited to the claims based on the facts asserted in the complaint. The class members were given notice of this settlement and no class members objected.

### 2. The Settlement Was the Product of Informed Non-Collusive Negotiations and the Stage of the Proceedings Favor Settlement

As discussed above, the proposed settlement was the product of arm's length, non-collusive negotiations, including a day-long mediation with a respected employment litigation and class action mediator, following informal exchange of information. (Bello Decl. ¶¶3-7; *see also Satchell v. Fed. Exp. Corp.*, No. C03-2659 SI, 2007 U.S. Dist. LEXIS 99066, at *44 (N.D. Cal. Apr. 13, 2007) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive.").) Although the Parties were able to settle the matter prior to a motion for class certification, Plaintiff was well-informed about the strengths and weaknesses of his case after the reviewing Defendant's written policies and relevant data  and conducting a damages analysis based on data produced by Defendants. (Bello Decl. ¶¶3-10, 11-34.)

Plaintiff and the putative class have been represented by experienced counsel, who demanded the most advantageous terms for the class throughout the litigation. In addition to the total settlement amount, counsel insisted that the settlement payment be non-reversionary and uncashed funds be held

1    by the State in the class members' names until claimed (i.e., maximizing payments to class members

2    and aligning the interests of all parties to a successful settlement administration).

3        **3.  The Experience and Supportive Views of Counsel Weigh in Favor of Final**
           **Approval**

4        Experienced counsel, operating at arms-length, have weighed the strengths of the case and

5    examined all of the issues and risks of litigation and endorse the proposed settlement. The view of

6    the attorneys actively conducting the litigation "is entitled to significant weight" in deciding whether

7    to approve the settlement. *Fisher Bros. v. Cambridge Lee Industries, Inc.,* 630 F.Supp. 482, 488 (E.D.

8    Pa. Oct. 2, 1985); *Ellis v. Naval Air Rework Facility,* 87 F.R.D. 15, 18, (N.D. Cal. Feb. 7, 1980); *Boyd*

9    *v. Bechtel Corp.,* 485 F.Supp. 610, 617 (N.D. Cal. Aug. 22, 1979). Both Plaintiff's and Defendants'

10   counsel are experienced in employment, wage and hour and class action matters. Lavi & Ebrahimian,

11   LLP, has been approved as class counsel in numerous actions. Joseph Lavi has been practicing law

12   for over 20 years, has founded a firm practicing almost exclusively in employment law since 2003,

13   has been approved in class counsel in numerous actions, and selected as a Southern California Super

14   Lawyer in the area of Plaintiff's employment litigation from 2011-2021. (Bello Decl. ¶38.) Jordan D.

15   Bello has been practicing law for over 14 years, has been approved in class counsel in numerous

16   actions, was selected as a Southern California Super Lawyer Rising Star in the area of Plaintiff's

17   employment litigation from 2012-2017 and a Super Lawyer in 2018-2021 and is also experienced in

18   handling employment, wage and hour and class action matters. (Bello Decl. ¶37) Sahag Majarian II

19   of The Law Offices of Sahag Majarian II, has been practicing law for over 31 years and is a well-

20   respected and experienced employment attorney who dedicates a significant portion of his practice to

21   employment law and class actions. (Majarian Decl. ¶¶2-4.) Mr. Majarian has been appointed class

22   counsel for plaintiffs in more than 50 wage and hour actions and has developed a thorough knowledge

23   of the legal issues related to certification and liability in the employment wage and hour class action

24   litigation context. (Bello Decl. ¶¶2-4.)

25       In short, Class Counsel are experienced and qualified to evaluate the class claims and to

26   evaluate settlement versus trial on a fully informed basis, and to evaluate the viability of the defenses.

27   Counsel on both sides share the view that this is a fair and reasonable settlement in light of the

28   complexities of the case, the state of the law and uncertainties of litigation and trial, and the benefit

the settlement confers on the class. Given the risks inherent in litigation, in class certification proceedings, and in the defenses asserted, this settlement is fair, adequate, and reasonable and in the best interests of the class.

### 4. The Presence of a Government Participant

No government entity has appeared in this matter. Defendants complied with the Class Action Fairness Act of 2005 (28 U.S.C. § 1715) by notifying the appropriate federal and state officials regarding this settlement months ago (ECF No. 25) and Plaintiff has complied with the PAGA's notice requirement to the California Labor Workforce Development Agency ("LWDA") (Bello Decl. ¶¶48, 49, Ex. 3). Despite months of notice regarding this settlement, the LWDA, any Attorneys General, or any other government entity have not registered any concern or otherwise taken a position regarding this matter, further supporting final approval of the settlement. (Bello Decl. ¶49.)

### 5. The Reaction of the Class Favors Approval

The Ninth Circuit and other federal courts have made clear that the number or percentage of class members who object to or opt out of the settlement is a very significant factor in determining whether to grant final approval. *See Mandujano v. Basic Vegetable Prods., Inc.*, 541 F.2d 832, 837 (9th Cir. 1976); *see also In re Am. Bank Note Holographics, Inc.*, 127 F. Supp. 2d 418, 425 (S.D.N.Y. 2001) ("It is well settled that the reaction of the class to the settlement is perhaps the most significant factor to be weighed in considering its adequacy") (internal quotation marks and citation omitted)); *Cody v. Hillard*, 88 F. Supp. 2d 1049, 1059-60 (D.S.D. Feb. 17, 2000) (approving the relevant settlement in large part because only 3% of the apparent class had objected to the settlement); *In re Dun & Bradstreet Credit Servs. Customer Litig.*, 130 F.R.D. 366, 372 (S.D. Ohio 1990) (approving the relevant settlement and affording "substantial weight" to the fact that fewer than 5% of the class members elected to opt out of the settlement); *In re Art Materials Antitrust Litig.*, 100 F.R.D. 367, 372 (N.D. Ohio 1983) (approving the settlement and holding that the fact that none of the class members had objected and a small percentage opted out of the settlement was "entitled to nearly dispositive weight").

No class action member has objected to the settlement and only one class member has requested exclusion. (Bello Decl. Ex. 2 ¶¶11-12.) Thus, 99.96% of the potential Class Members are

1    poised to recover and appear to approve the terms of the settlement.

2         In sum, all of the relevant factors demonstrate that this is a fair, adequate and reasonable

3    settlement, and final approval is therefore appropriate.

4    **B.    The Requested Attorneys' Fees And Costs Are Reasonable And Should Be Approved**

5         Here, Plaintiff's Counsel's request for the benchmark fee award of twenty-five percent of the

6    common fund (i.e., $1,125,000) is justified by the fair result and the non-reversionary nature of the

7    settlement. Courts consider not only the results achieved, but also the risk of litigation, the contingent

8    nature of the fee and the financial burden carried by the Plaintiff. *See, e.g., In re Omnivision Techs.,*

9    *Inc.*, 559 F.Supp.2d 1036, 1046 (N.D. Cal. Dec. 6, 2007).

10    **1.    Plaintiff's Fee Request is Reasonable Under the Lodestar Method**

11         In a common fund settlement "[t]he lodestar method is merely a cross-check on the

12    reasonableness of a percentage figure." *Vizcaino v. Microsoft Corp.,* 290 F.3d 1043, 1050, n.5 (9th

13    Cir. 2002). The Ninth Circuit's benchmark for presumptively reasonable fees in this context is twenty-

14    five percent of the Maximum Settlement Fund, and courts that depart from the benchmark should

15    indicate their reasons for doing so. *Glass v. USB Fin. Servs.,* No. C-06-4068 MMC, 2007 U.S. Dist.

16    LEXIS 8476, at *44-45 (N.D. Cal. Jan. 26, 2007). Under the "common fund" doctrine, "a litigant or

17    a lawyer who recovers a common fund for the benefit of persons other than himself or his client is

18    entitled to a reasonable attorney's fee from the fund as a whole." *Boeing Co. v. Van Gemert* (1980)

19    444 U.S. 472, 478 (1980). The Supreme Court explained: "The doctrine rests on the perception that

20    persons who obtain the benefit of a lawsuit without contributing to its costs are unjustly enriched at

21    the successful litigants' expense. Jurisdiction over the fund involved in the litigation allows a court

22    to prevent this inequity by assessing attorney's fees against the entire fund, thus spreading fees

23    proportionately among those benefitted by the suit." *Id.* Thus, the common fund doctrine ensures that

24    each beneficiary of the settlement contributes proportionately to the payment of the attorneys' fees

25    recovered from monetary payments that the prevailing party recovered in the lawsuit. *Stanton v.*

26    *Boeing,* 327 F.3d 938, 967 (9th Cir. 2003) (citing *Wininger v. SI Mgmt. L.P.*, 301 F.3d 1115 (9th Cir.

27    2002)). In this case, consideration of Class Counsel's lodestar as a cross-check to the percentage

28    figure also supports the reasonableness of the requested fee award. The base amount is then adjusted

1 in light of various factors.

2       Here, Plaintiff's Counsel has spent approximately 491.7 hours in the case thus far with a

3 lodestar of approximately $346,305. (Bello Decl. ¶¶ 41-43, 46, Ex. 12 (L&E 325.9 hours with lodestar

4 of $230,245); Majarian Decl. ¶9 (Majarian with 165.80 hours with lodestar of $116,060).) Plaintiff's

5 Counsel has also incurred approximately $11,362.77 in costs. (Bello Decl. ¶47, Ex. 13; Majarian

6 Decl. ¶9, Ex. B.) Counsel's hourly rates are reasonable, Counsel's hours spent are reasonable, and are

7 entitled to a 3.25 multiplier to account for the successful result in this action and to compensate

8 Plaintiff and his counsel for the contingent risk inherent in the litigation and for the delay in receiving

9 fees.

10       The hourly rates of the attorneys—$650 for Jordan D. Bello, $750 for partner Joseph Lavi,

11 and $700 for Sahag Majarian II—are in line with rates approved for attorneys in California with

12 similar experience. (Bello Decl. ¶¶35-39, Ex. 4-11 (printouts of California firms from 2014 NLJ

13 Survey of Attorney Fees, 2015 NLJ Survey of Attorney Fees, and Laffey Matrix and Locality tables);

14 Majarian Decl. ¶¶2-4.) Joseph Lavi has recently been approved at a $750 hourly rate and I have

15 recently been approved at a $650 hourly rate in a lode start cross-check of requested fees in a

16 December 8, 2020, judgment and order granting Plaintiff's motion for final approval of class action

17 settlement in Seper, et al. v. Vitas Healthcare Corporation of California, Los Angeles Superior Court

18 Case Number BC642857 and in a February 10, 2021 judgment and order granting Plaintiff's motion

19 for final approval of class action settlement in Alvarado v. Dart Container Corporation of California,

20 Riverside Superior Court Case Number RIC1211707. In Alvarado v. Dart Container Corporation of

21 California, fee expert Richard M. Pearl approved of Joseph Lavi's $750 hourly rate and Jordan Bello's

22 hourly rate of $650 as reasonable. (*See* Bello Decl. Ex. 14 (Pearl Decl. filed in Alvarado excluding

23 400 pages of exhibits).), Sahag Majarian has been approved at his $700 rate in various courts

24 throughout California in the last three years. (Majarian Decl. ¶4.)

25       Class Counsel's skill and experience support their hourly rates. (Bello Decl. ¶¶37-38

26 (describing experience in employment law and class actions with Mr. Bello a senior associate out of

27 law school for 16 years and in practice in employment law with Lavi & Ebrahimian, LLP for over 14

28 years, Mr. Lavi practicing law for 21 years and founding partner of an employment law practice for

18 years); Majarian Decl. ¶¶2-4 (practicing law for 31 years with experience in wage and hour class actions).) Other attorneys working in California courts charge comparable if not higher rates as indicated in the printouts of California firms' billing rates from the 2014 National Law Journal Survey showing partner rates up to $1,195 and associate rates up to $750. (Bello Decl. Ex. 4 (printouts from 2014 National Law Journal Survey for California firms showing a high rate for partners of $1,195 and high for associates of $725); see Ex. 5 (2015 National Law Journal Survey showing 2015 fees of California partners with high of $1,080 and associate high of $950); *see, e.g., Barrera v. Gamestop Corp.*, No. CV 09-1399 ODW, Dkt. 56 (C.D. Cal. Nov. 29, 2010) ($700 an hour for partners); and *Anderson v. Nextel Retail Stores, LLC*, No. CV 07-4480, Dkt. 110 (C.D. Cal. June 30, 2010) ($655 to $750 an hour for partners).) Plaintiff's Counsel's rates are also in line with the Laffey Matrix which after applying the locality increase for Los Angeles County attorneys states a rate of $773 for attorneys 11 to 19 years' experience and $931 for attorneys 20 plus years' experience. (Bello Decl. ¶34, Ex. 6-11.)

### a.  Class Counsel's total hours are reasonable

In determining a lodestar, reasonable hours include, in addition to time spent during litigation, the time spent before the action is filed, including time spent interviewing the clients, investigating the facts and the law, and preparing the initial pleadings. *See New York Gaslight Club, Inc. v. Carey,* 447 U.S. 54, 62 (1980). Further, the fee award should include fees incurred to establish and defend the attorneys' fee claim.

Class Counsel has spent approximately 491.7 hours on this case. (Bello Decl. ¶¶ 41-43, 46; Majarian Decl. ¶9.)  In summary form, counsel's many tasks included the following: pre-filing investigation, legal research, and research of Defendants and their relationship; meeting and communicating with client regarding his responsibility in bringing the action, the facts of his case, his employment, his work environment, his documents and Defendants' policies and procedures; drafting pleadings and discovery; drafting communications with the LWDA; reviewing Plaintiff's file and determining liability and evaluating claim and defense strengths and weaknesses; legal research of case law and wage orders regarding applicable claims and defenses; meeting and conferring over formal discovery; meeting and conferring over informal discovery and mediation; drafting notices for

litigation; evaluating Defendants' policies; determining case strategy; communicating with Defendants' Counsel; evaluating data and information provided in discovery; calculating damages; negotiating settlement and settlement documents; communicating with the administrator and responding to administrator's inquiries; preparing the motion for preliminary approval and supporting documents; meeting with client regarding approval of the settlement, and preparing the motion for final approval and supporting documents. (Bello Decl. ¶ 42, Ex. 12; Majarian Decl. ¶¶ 5, 7-9, Ex. A.) All of the tasks and work performed were reasonable and necessary to the prosecution of this case and justified, particularly in light of the result achieved.

> **b. A 3.25 multiplier is appropriate to account for the fair result in the action and to compensate plaintiff and his counsel for the contingent risk assumed by counsel and delay in receiving fees**

Lodestar "multipliers" are used to compensate class counsel for the risk of non-payment, to reward class counsel for exceptional results and/or the complexity of the litigation, to reward counsel for non-monetary benefits to the class, and to compensate class counsel for protracted litigation. *Vizcaino,* 290 F.3d at 1048-51.

**Contingent Risk of Litigation**: The rationale for a fee enhancement in contingency cases is to not only compensate the attorney for legal services, but to provide fair compensation for the risk and delay of not being paid at all. In counsel's experience, the risks of prosecuting a class action case such as this are significant. For example, in a recent case alleging similar claims of unpaid time for security screening titled Sims v. United Parcel Service, Inc., Plaintiff's Counsel expended $104,509.92 in expert fees prior to filing his class certification motion. *Sims v. United Parcel Service, Inc.,* No. 2:20-cv-00378-PSG-AFM, ECF No. 57-7 ¶9, Appendix B pp. 56-62 (C.D. Cal. Dec. 28, 2020) (expert declaration in support of class certification motion with invoices paid totaling $104,509.92). Plaintiff anticipated using a similar expert to draft and mail surveys and incur the same costs which would be incurred on a contingency basis and at risk of never being recovered if the court denied certification. Class Counsel has expended time in the prosecution of this litigation on a contingency basis without any direct compensation and having advanced litigation costs, carrying the risk that this time and the current out-of-pocket costs would be lost if the case were not resolved successfully.

**Litigation Precluded Other Employment**: As a relatively small law firm, Class Counsel can only properly litigate a limited number of cases at one time. The professional demands of this case were not insignificant. Class Counsel was necessarily precluded from working on other cases while working on this case.

**Delay In Receiving Fees**: A Court may also enhance a lodestar amount for a long delay in payment before an attorney can collect fees. Plaintiff's Counsel has delayed payment and reimbursement in this case for over two years since the case was filed in November 2018.

The Court should approve the requested attorney's fees and costs, which are justified by the results achieved, the complexity of the issues, the difficulty of the case, and the great risk undertaken by Class Counsel. As outlined above, requested attorneys' fees and costs will not be opposed by Defendants and are well within established guidelines. The Class Members have also been notified of the requested amount and no Class Member has objected to the requested fees.

### 2. Plaintiff's Costs Request Is Reasonable

The settlement allows for a request of up to $15,000.00 in litigation costs. Plaintiff's Counsel requests $11,362.77 in costs in this matter. Lavi & Ebrahimian LLP has expended $10,392.26 and the Law Offices of Sahag Majarian II has expended $970.51 in costs in this case. (Bello Decl., Ex. ___; Majarian Decl. ¶ 9, Ex. B.) All costs were reasonably incurred in prosecution of the lawsuit and paid on a contingency basis. A large portion of these costs were associated with initial filing and complex fees for this case ($1,435), mediation ($6,000), and data analysis ($2,062.50) and the remainder was reasonably incurred in prosecution of the lawsuit. Accordingly, the requested costs in reimbursement, is appropriate and reasonable.

### C.   The Requested Enhancement Award To Named Plaintiff Is Reasonable

The Class Representative's $7,500 modest service award is justified under the case law and the facts of this case. *See, e.g., Staton,* 327 F.3d 977 (recognizing that service awards to named plaintiffs in a class action are permissible and do not render a settlement unfair or unreasonable); *Glass v. UBS Fin. Servs.*, Inc., 2007 WL 221862, at *16 (N.D. Cal. Jan. 26, 2007) (approving payments of $25,000 to each named plaintiff); *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 268 (N.D. Cal. 2015) (awarding named plaintiff in wage and hour class action $10,000 as a service award, and an additional $5,000 award solely for the general release that the named plaintiff executed

1    as part of the settlement agreement); *Van Vranken v. Atl. Richfield Co.,* 901 F. Supp. 294, 299 (N.D.

2    Cal. 1995) (awarding $50,000 to a lead plaintiff).

3            Plaintiff Mejia has performed considerable services on behalf of the Class during the

4    litigation. Plaintiff's Counsel cannot understate the importance of the role of an employee who is

5    willing to search out an attorney and step forward to assume the risk of litigation and retaliation in

6    order to represent a class and put the interests of the class before his or her interests. Plaintiff has

7    understood and understands that this is a class action where he is serving as the class representative

8    and must protect the class members' interests. (Mejia Decl. ¶3.) Mr. Mejia is the catalyst to the benefit

9    reached for the class members and has actively protected the Class Members' interests during the

10   pendency of this matter and will continue to do so even if the case were required to go to trial. (Mejia

11   Decl. ¶¶ 4-6.) Plaintiff spent approximately 55 to 65 hours participating in this matter by searching

12   for an attorney, communicating with his attorneys on numerous occasions, searching for and

13   producing relevant documents related to his employment, responding to his attorney's telephone

14   inquiries, searching out and speaking to former coworkers to see if they would give evidence as

15   witnesses in the case, traveling from Woodland, California to Irvine, requiring an overnight stay to

16   participate in and attend mediation, spending time in meetings and telephone conferences with

17   counsel to better inform counsel of the Class Member's work environment and requirements,

18   providing necessary information for settlement discussions, reviewing the settlement documents, and

19   approving the settlement on behalf of all class members. (Mejia Decl. ¶5.)

20           Mr. Mejia also undertook the significant risks associated with acting as class representative.

21   He understood that he was putting himself at risk to pay costs of litigation if the case was unsuccessful

22   and accepted those risks. (Mejia Decl. ¶6.) Mr. Mejia also understood that that he was at risk of loss

23   of income due to missing work to fulfill any responsibilities required to participate in litigation and

24   had to take time off work to prepare for and attend mediation. (Mejia Decl. ¶6.) Mr. Mejia put himself

25   at risk of retaliation by employers who may not approve that he sued his employer. (*Id.*; *see Ross v.*

26   *U.S. Bank Nat. Ass'n*, 2010 WL 3833922, at *4 (N.D. Cal. Sept. 29, 2010) (service awards based on

27   "willingness to serve as representatives despite the potential stigma that might attach to them in the

28   banking industry from taking on those roles").

In contrast, without having to take on any of the risk incurred by Plaintiff or time spent by Plaintiff in litigating this matter or release of all claims against Defendants; class members will receive a payment for their claims. It appears that the Class Members recognize this enhancement was justified because the Class received notice of the requested amount and no one has objected to the request. Thus, the service payment request as an enhancement award to Plaintiff is warranted to compensate him for his time and effort, the fear and stress associated with assuming the responsibility of serving as the class representative, and the concrete risks he assumed as a class representative.

## II.    CONCLUSION

The proposed class action settlement is fair, adequate, and reasonable. It will result in fair and immediate payment to Class Members; it is non-collusive; and it was achieved as the result of informed, extensive, and arms' length negotiations conducted by counsel for respective parties who are experienced in wage and hour class action litigation. For the foregoing reasons, the parties respectfully request that the Court grant final approval of the proposed Settlement.

Dated: February 22, 2021                 **LAVI & EBRAHIMIAN, LLP**


                                         By:  /s/ Jordan D. Bello
                                              Joseph Lavi, Esq.
                                              Jordan D. Bello, Esq.
                                              Attorneys for PLAINTIFF
                                              LUCAS MEJIA and Other Class Members