1

2

3

4

5

6

7

8                      UNITED STATES DISTRICT COURT

9                     EASTERN DISTRICT OF CALIFORNIA

10                          ----oo0oo----

11

12  LUCAS MEJIA, on behalf of          No. 2:19-cv-00218 WBS AC
    himself and all others similarly
13  situated,

14            Plaintiff,              MEMORANDUM AND ORDER RE:
                                      MOTION FOR FINAL APPROVAL OF
15       v.                           CLASS ACTION SETTLEMENT AND
                                      MOTION FOR ATTORNEYS' FEES,
16  WALGREEN CO., an Illinois         COSTS, AND REPRESENTATIVE
    Corporation; WALGREEN CO./ILL.,   SERVICE PAYMENT
17  a business entity unknown; and
    DOES 1 to 100, inclusive,

18
              Defendants.
19

20                          ----oo0oo----

21
              Plaintiff Lucas Mejia, individually and on behalf of
22
    all other similarly situated employees, brought this putative
23
    class action against defendants Walgreen Co. and Walgreen
24
    Co./Ill. (collectively, "defendants"), alleging violations of the
25
    California Labor Code, Cal. Lab. Code §§ 201-203, 226.7, 510,
26
    1194, 1997, 1198, the California Business and Professions Code,
27
    Cal. Bus. Prof. Code § 17200, and the California Private
28
                                 1

1  Attorneys General Act of 2004 ("PAGA"), Cal. Lab. Code § 2698, et
2  seq. (See First Am. Compl. ("FAC") (Docket No. 1-6).)  Plaintiff
3  now moves unopposed for final approval of the parties' class
4  action settlement and attorneys' fees, costs, and a class
5  representative service payment.  (See Mot. for Final Approval
6  (Docket No. 28).)

7  I.   Discussion[1]

8       The Ninth Circuit has declared a strong judicial policy
9  favoring settlement of class actions.  Class Plaintiffs v. City
10 of Seattle, 955 F.2d 1268, 1276 (9th Cir. 1992); see also
11 Rodriguez v. W. Publ'g Corp., 563 F.3d 948, 965 (9th Cir. 2009)
12 ("We put a good deal of stock in the product of an arms-length,
13 non-collusive, negotiated resolution[.]") (citation omitted).
14 Rule 23(e) provides that "[t]he claims, issues, or defenses of a
15 certified class may be settled . . . only with the court's
16 approval."  Fed. R. Civ. P. 23(e).

17      "Approval under 23(e) involves a two-step process in
18 which the Court first determines whether a proposed class action
19 settlement deserves preliminary approval and then, after notice
20 is given to class members, whether final approval is warranted."
21 Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc., 221 F.R.D. 523,
22 525 (C.D. Cal. 2004) (citing Manual for Complex Litig. (Third),
23 § 30.41 (1995)).  This court satisfied step one by granting
24 plaintiff's unopposed motion for preliminary approval of class

25 _____

26      [1]   The court already recited the factual and procedural
   background in its order granting plaintiff's unopposed motion for
27 preliminary approval of the class action settlement.  (See Order
   Granting Preliminary Approval at 2-3 (Docket No. 24).)
28 Accordingly, the court will refrain from doing so again.

1   action settlement on November 24, 2020.  (Docket No. 24.)  Now,

2   following notice to the class members, the court will consider

3   whether final approval is merited by evaluating: (1) the

4   treatment of this litigation as a class action and (2) the terms

5   of the settlement.  See Diaz v. Tr. Territory of Pac. Islands,

6   876 F.2d 1401, 1408 (9th Cir. 1989).

7        A.   Class Certification

8             A class action will be certified only if it meets the

9   requirements of Rule 23(a)'s four prerequisites and fits within

10  one of Rule 23(b)'s three subdivisions.  Fed. R. Civ. P. 23(a)-

11  (b).  Although a district court has discretion in determining

12  whether the moving party has satisfied each Rule 23 requirement,

13  the court must conduct a rigorous inquiry before certifying a

14  class.  See Califano v. Yamasaki, 442 U.S. 682, 701 (1979); Gen.

15  Tel. Co. of Sw. v. Falcon, 457 U.S. 147, 161 (1982).

16            1.   Rule 23(a)

17            Rule 23(a) restricts class actions to cases where:
            (1) the class is so numerous that joinder of all
18          members is impracticable; (2) there are questions
            of law or fact common to the class; (3) the claims
19          or defenses of the representative parties are
            typical of the claims or defenses of the class;
20          and (4) the representative parties will fairly and
            adequately protect the interests of the class.
21

22  Fed. R. Civ. P. 23(a).  These requirements are commonly referred

23  to as numerosity, commonality, typicality, and adequacy of

24  representation.  In the court's order granting preliminary

25  approval of the settlement, the court found that the putative

26  class satisfied the Rule 23(a) requirements.  (See Order Granting

27  Preliminary Approval at 6-12.)  The court is unaware of any

28

                                    3

1 changes that would affect its conclusion that the putative class

2 satisfies the Rule 23(a) requirements, and the parties have not

3 indicated that they are aware of any such developments.  (Mot.

4 for Final Approval at 1-17.)  The court therefore finds that the

5 class definition proposed by plaintiff meets the requirements of

6 Rule 23(a).

7                    2.   Rule 23(b)

8             An action that meets all the prerequisites of Rule

9 23(a) may be certified as a class action only if it also

10 satisfies the requirements of one of the three subdivisions of

11 Rule 23(b).  Leyva v. Medline Indus. Inc., 716 F.3d 510, 512 (9th

12 Cir. 2013).  In its order granting preliminary approval of the

13 settlement, the court found that both the predominance and

14 superiority prerequisites of Rule 23(b)(3) were satisfied.

15 (Order Granting Preliminary Approval at 12-17.)  The court is

16 unaware of any changes that would affect its conclusion that Rule

17 23(b)(3) is satisfied.  Because the settlement class satisfies

18 both Rule 23(a) and 23(b)(3), the court will grant final class

19 certification of this action.

20                    3.   Rule 23(c)(2) Notice Requirements

21             If the court certifies a class under Rule 23(b)(3), it

22 "must direct to class members the best notice that is practicable

23 under the circumstances, including individual notice to all

24 members who can be identified through reasonable effort."  Fed.

25 R. Civ. P. 23(c)(2)(B).  Rule 23(c)(2) governs both the form and

26 content of a proposed notice.  See Ravens v. Iftikar, 174 F.R.D.

27 651, 658 (N.D. Cal. 1997) (citing Eisen v. Carlisle & Jacquelin,

28 417 U.S. 156, 172-77 (1974)).  Although that notice must be

"reasonably certain to inform the absent members of the plaintiff class," actual notice is not required. <u>Silber v. Mabon</u>, 18 F.3d 1449, 1454 (9th Cir. 1994) (citation omitted).

The parties selected CPT Group, Inc. ("CPT") to serve as the Settlement Administrator. (Decl. of Daniel P. La with Respect to Notification and Settlement Administration ("La Decl."), Ex. 2 to Decl. of Jordan D. Bello in Supp. Of Final Approval ("Bello Decl.") ¶ 1 (Docket No. 28-2).) Defendants timely provided CPT with the class list, including the class members' names, social security numbers, last known mailing address, employee identification number, and total number of applicable workweeks worked. (<u>Id.</u> at ¶ 5.) The class list contained 2,672 class members.[2] (<u>Id.</u>)

To update the address data contained within the class list provided by defendants and ensure delivery of the notice packets, CPT conducted a National Change of Address ("NCOA") search using the United States Postal Service's NCOA Database. (<u>Id.</u> at ¶ 6.) As a result of the search, CPT was able to locate 328 new addresses. (<u>Id.</u>) CPT mailed notice packets to twelve additional class members by First Class Mail on November 19, 2020, upon receiving social security number data from the parties. (<u>Id.</u>) CPT then mailed notice packets to the entire class list. (<u>Id.</u>)

As of February 22, 2021, 267 class notices were returned to CPT by the U.S. Post Office as undeliverable. (<u>Id.</u>

---

[2]   Plaintiff originally estimated that there would be 2,648 class members. (<u>See</u> Order Granting Preliminary Approval at 6-7.)

at ¶ 8.)   Through skip traces and requests from counsel or class members, CPT was able to re-mail 257 class notices, 32 of which remain undeliverable.  (Id. at ¶ 9.)  CPT also attempted to call each of these class members but were unable to make contact. (Id.)

CPT has received three responses from class members: one written request for exclusion, and two deficient workweek disputes.  (Id. at ¶ 10.)  The two class members who submitted deficient workweek disputes stated that their workweeks were incorrect and provided payroll documents, but did not specify the number of workweeks they were disputing.  (Id.)  CPT states that it sent these two class members deficiency letters attempting to clarify this information, but has not, as of February 22, 2021, heard back from either class member.  (Id.)

Because CPT has received one valid request for exclusion from the settlement, CPT will issue 2,671 individual settlement amounts to participating class members, representing a 99.96% participation rate.  (Id. at ¶ 12.)

"Notice is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'"  Churchill Vill., L.L.C. v. Gen. Elec., 361 F.3d 566, 575 (9th Cir. 2004) (quoting Mendoza v. Tucson Sch. Dist. No. 1, 623 F.2d 1338, 1352 (9th Cir. 1980)).  The notice identifies the parties, explains the nature of the proceedings, defines the class, provides the terms of the settlement, and explains the procedure for objecting or opting out of the class.  (La Decl. ¶ 9, Ex. A.)  The notice also explains how class members'

individual settlement awards will be calculated and the amount that class members can expect to receive. (Id.) Accordingly, the notice complies with Rule 23(c)(2)(B)'s requirements.

  B.   Rule 23(e): Fairness, Adequacy, and Reasonableness of Proposed Settlement

  Having determined that class treatment is warranted, the court must now address whether the terms of the parties' settlement appear fair, adequate, and reasonable. See Fed. R. Civ. P. 23(e)(2). To determine the fairness, adequacy, and reasonableness of the agreement, Rule 23(e) requires the court to consider four factors: "(1) the class representatives and class counsel have adequately represented the class; (2) the proposal was negotiated at arm's length; (3) the relief provided for the class is adequate; and (4) the proposal treats class members equitably relative to each other." Id. The Ninth Circuit has also identified eight additional factors the court may consider, many of which overlap substantially with Rule 23(e)'s four factors:

> The strength of the plaintiff's case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

Hanlon v. Chrysler Corp., 150 F.3d 1011, 1026 (9th Cir. 1998).[3]

_____

[3]   Because claims under PAGA are "a type of qui tam action" in which an employee brings a claim as an agent or proxy of the state's labor law enforcement agencies, the court must also "review and approve" settlement of plaintiff's and other class members' PAGA claims along with their class claims. See Cal. Lab. Code § 2669(k)(2); Sakkab v. Luxottica Retail N. Am.,

1          1.   Adequate Representation

2          The court must first consider whether "the class

3    representatives and class counsel have adequately represented the

4    class."  Fed. R. Civ. P. 23(e)(2)(A).  This analysis is

5    "redundant of the requirements of Rule 23(a)(4) . . . ."  Hudson

6    v. Libre Tech., Inc., No. 3:18-cv-1371-GPC-KSC, 2020 WL 2467060,

7    at *5 (S.D. Cal. May 13, 2020) (quoting Rubenstein, 4 Newberg on

8    Class Actions § 13:48 (5th ed.)) see also In re GSE Bonds Antitr.

9    Litig., 414 F. Supp. 3d 686, 701 (S.D.N.Y. 2019) (noting

10   similarity of inquiry under Rule 23(a)(4) and Rule 23(e)(2)(A)).

11         Because the Court has found that the proposed class

12   satisfies Rule 23(a)(4) for purposes of class certification, the

13   adequacy factor under Rule 23(e)(2)(A) is also met.  See Hudson,

14   2020 WL 2467060, at *5.

15         2.   Negotiation of the Settlement Agreement

16         Counsel for both sides appear to have diligently

17   pursued settlement after thoughtfully considering the strength of

18   their arguments and potential defenses.  The parties participated

19   in an arms-length mediation before an experienced employment

20

21   Inc., 803 F.3d 425, 435-36 (9th Cir. 2015).
          Though "PAGA does not establish a standard for evaluating

22   PAGA settlements," Rodriguez, 2019 WL 331159 at *4 (citing Smith
     v. H.F.D. No. 55, Inc., No. 2:15-CV-01293 KJM KJN, 2018 WL

23   1899912, at *2 (E.D. Cal. Apr. 20, 2018)), a number of district
     courts have applied the eight Hanlon factors, listed above, to

24   evaluate PAGA settlements.  See, e.g., Smith, 2018 WL 1899912, at
     *2; Ramirez, 2017 WL 3670794, at *3; O'Connor v. Uber Techs., 201

25   F. Supp. 3d 1110, 1134 (N.D. Cal. 2016).  "Many of these factors
     are not unique to class action lawsuits and bear on whether a

26   settlement is fair and has been reached through an adequate
     adversarial process."  See Ramirez, 2017 WL 3670794, at *3.

27   Thus, the court finds that these factors will also govern its
     review of the PAGA settlement.  See id.

28
                                  8

1   litigation mediator, Lynn Frank, on December 5, 2019.  (Bello
2   Decl. ¶ 7.)  Though the case did not settle by the close of
3   mediation, the parties continued further negotiations which
4   resulted in settlement in principle in March 2020 and ultimately
5   resulted in the long-form Settlement Agreement now before the
6   court.  (Id.)  Given the sophistication and experience of
7   plaintiff's counsel and the parties' representation that the
8   settlement reached was the product of arms-length bargaining, the
9   court does not question that the proposed settlement is in the
10  best interest of the class.  See Fraley v. Facebook, Inc., 966 F.
11  Supp. 2d 939, 942 (N.D. Cal. 2013) (holding that a settlement
12  reached after informed negotiations "is entitled to a degree of
13  deference as the private consensual decision of the parties"
14  (citing Hanlon, 150 F.3d at 1027)).

15          3.   Adequate Relief

16          In determining whether a settlement agreement provides
17  adequate relief for the class, the court must "take into account
18  (i) the costs, risks, and delay of trial and appeal; (ii) the
19  effectiveness of any proposed method of distributing relief to
20  the class, including the method of processing class-member
21  claims; (iii) the terms of any proposed award of attorney's fees,
22  including timing of payment; and (iv) any [other] agreement[s]"
23  made in connection with the proposal.  See Fed. R. Civ. P.
24  23(e)(2)(C); Baker v. SeaWorld Entm't, Inc., No. 14-cv-02129-MMA-
25  AGS, 2020 WL 4260712, at *6-8 (S.D. Cal. Jul. 24, 2020).

26          The court notes that, in evaluating whether the
27  settlement provides adequate relief, it must consider
28  several of the same factors as outlined in Hanlon,

1   including the strength of the plaintiff's case, the risk,

2   expense, complexity, and likely duration of further

3   litigation, the risk of maintaining class action status

4   throughout the trial, and the amount offered in settlement.

5   See Hanlon, 150 F.3d at 1026.

6            In determining whether a settlement agreement is

7   substantively fair to class members, the court must balance

8   the value of expected recovery against the value of the

9   settlement offer.  See In re Tableware Antitrust Litig., 484

10  F. Supp. 2d 1078, 1080 (N.D. Cal. 2007).  Here, plaintiff's

11  counsel estimates that defendants' potential exposure without

12  including PAGA penalties would be approximately $20,109,580.

13  (See Bello Decl. ¶ 32.)  The case settled for $4,500,000,

14  which is approximately 22.37% of the potential damages.  (See

15  id.)  Plaintiff's counsel stresses that, although the

16  settlement does not amount to defendants' total potential

17  exposure, defendants would have put forward several

18  meritorious defenses that could have resulted in the class

19  receiving nothing.  (See id.)

20           For instance, in response to plaintiff's allegations

21  that defendants failed to pay wages at the applicable minimum

22  wage or overtime rate because they (1) improperly rounded off

23  hours worked on employee paychecks, and (2) conducted

24  mandatory off-the-clock security checks, defendants argue that

25  their quarter-hour rounding policy was neutral on its face,

26  such that employees were underpaid when the time was rounded

27  down to the nearest quarter-hour, but overpaid when the time

28  was rounded up to the nearest quarter-hour, and that they

10

ceased using rounding in January 2020.  (See id. at ¶ 13.)
Defendants also argue that their security check policy was not
in effect throughout the entire class period, and only
required employees to briefly show their bags to security,
such that employees often were not even required to stop
working and, therefore, the policy resulted in a de minimus
amount of off-the-clock time.  (See id.)  Defendants would
have asserted essentially the same security-check defense in
response to plaintiff's allegations that defendants failed to
provide legally-compliant meal and rest breaks due to the time
spent going through security checks, (see id. at ¶¶ 18-23),
as well as in response to plaintiff's derivative wage
statement claims (see id. at ¶¶ 24-26).

         In response to plaintiff's allegations that
defendants incorrectly identified their identity on
employee wage statements, defendants argue that listing a
variant of their name (i.e., "Walgreen Co./Ill" instead of
"Walgreen Co.") satisfies the requirements of Labor Code
§ 226.  (See id. at ¶ 28 (citing Elliot v. Spherion Pac.
Work, LLC, 572 F. Supp.2d. 1169, 1179-80 (C.D. Cal.
2008)).)  Additionally, in response to plaintiffs' waiting
time penalties claim, defendants would have argued that
plaintiff could not have proven defendants' failure to pay
unpaid wages was willful, and that meal and rest period
wages do not give rise to Labor Code § 203 derivative
penalties.  (See id. at ¶ 30.)

         Because PAGA penalties arise from underlying
violations of the California Labor Code, all of these

11

defenses would apply to plaintiff's PAGA claim as well.
Plaintiff's counsel estimates that, considering these
defenses, plaintiff could have collected an additional
$16,059,468 in PAGA penalties.  (See id. at ¶ 32.)
However, in actions involving wage and hour class claims
and PAGA claims that settle, parties often minimize the
total amount of the settlement that is paid to PAGA
penalties in order to maximize payments to class members.
See, e.g., Garcia v. Gordon Trucking, Inc., Case No. 1:10-
cv-0324 AWI SKO, 2012 WL 5364575, at *7 (E.D. Cal. Oct. 31,
2012) (granting final approval of $10,000 in PAGA penalties
out of a total settlement amount of $3,700,000); Chu v.
Wells Fargo Invs., LLC, Case Nos. C 06-4526 MHP, C 06-7924
MHP, 2011 WL 672645, at *4 (N.D. Cal. Feb. 16, 2011)
(granting final approval of $10,000 in PAGA penalties out
of a total settlement amount of $6,900,000).

In light of the risks associated with further
litigation, the relative strength of defendants' arguments,
and the amount which comparably-sized settlements tend to
attribute to PAGA penalties, the court finds that the
settlement's overall recovery of $4,500,000, with $150,000
allocated to PAGA penalties, counsels in favor of granting
final approval.

The court further finds the method of processing
class member claims to be adequate.  Each class member's
individual share of the settlement is proportional to the
number of weeks the class member worked for defendants during
the time period covered by the Settlement Agreement.  (See

1   Bello Decl., Ex. 1 ("Settlement Agreement") ¶ M(1) (Docket No.

2   28-2).)  Plaintiff's counsel estimates that the Settlement

3   Agreement will result in an average payment of approximately

4   $1,064.79 per employee.

5           The Settlement Agreement further authorizes

6   plaintiff's counsel to seek attorney's fees totaling 33% of

7   the $4,500,000 Gross Settlement Amount ("GSA"), or

8   $1,500,000.  (See Settlement Agreement ¶ M(3).)

9   Plaintiff's counsel now seeks less than that: 25% of the

10  GSA, or $1,125,000.  (See Mot. for Final Approval at 18.)

11  If a negotiated class action settlement includes an award

12  of attorney's fees, then the court "ha[s] an independent

13  obligation to ensure that the award, like the settlement

14  itself, is reasonable, even if the parties have already

15  agreed to an amount."  In re Bluetooth Headset Prods. Liab.

16  Litig., 654 F.3d 935, 941 (9th Cir. 2011).

17          Plaintiff's counsel has filed a motion for attorneys'

18  fees and costs pursuant to Federal Rule 23(h).  Though the court

19  will address the reasonableness of counsel's fees in additional

20  detail below, in Section C, the court is satisfied that counsel's

21  fees are reasonable and support approval of the settlement.

22          In light of the claims at issue, defendants' potential

23  exposure, the risk to plaintiff and to the class of proceeding to

24  trial, and the fact that the court finds counsel's request for

25  attorneys' fees to be reasonable (as discussed below), the court

26  finds that the substance of the settlement is fair to class

27  members and thereby "falls within the range of possible

28  approval," both for plaintiff's California Labor Code claims and

                                  13

1  his PAGA claim.  See Tableware, 484 F. Supp. 2d at 1079; Ramirez,

2  2017 WL 3670794, at *3.  Counsel has not directed the court to

3  any other relevant agreements that would alter this analysis.

4  The court therefore finds that Rule 23(e)'s third factor is

5  satisfied.  See Fed. R. Civ. P. 23(e)(C).

### 4.   Equitable Treatment of Class Members

7         Finally, the court must consider whether the Settlement

8  Agreement "treats class members equitably relative to each

9  other."  See Fed. R. Civ. P. 23(e)(2)(D).  In doing so, the Court

10  determines whether the settlement "improperly grant[s]

11  preferential treatment to class representatives or segments of

12  the class."  Hudson, 2020 WL 2467060, at *9 (quoting Tableware,

13  484 F. Supp. at 1079.

14         Here, the Settlement Agreement does not improperly

15  discriminate between any segments of the class, as all class

16  members are entitled to monetary relief based on the number of

17  compensable workweeks they spent working for defendants.  (See

18  Settlement Agreement ¶ M(1); Bello Decl. ¶ 34.)  Though two class

19  members disputed CPT's calculation of the number of weeks they

20  worked for defendants, they did not object to the underlying formula

21  used to calculate the number of compensable workweeks or to

22  determine how much money they are entitled to under the Agreement.

23  (See La Decl. ¶ 10.)

24         While the Settlement Agreement allows plaintiff to seek

25  an incentive award of $7,500, plaintiff has submitted additional

26  evidence documenting his time and effort spent on this case,

27  which, as discussed further below, in Section E, has satisfied

28  the court that his additional compensation above other class

1    members is justified.  See Hudson, 2020 WL 2467060, at *9.  The

2    court therefore finds that the Settlement Agreement treats class

3    members equitably.  See Fed. R. Civ. P. 23(e)(D).

4              5.    Remaining Staton Factors

5              In addition to the Staton factors already considered as

6    part of the court's analysis under Rule 23(e)(A)-(D), the court

7    must also take into account "the extent of the discovery

8    completed . . . the presence of government participation, and the

9    reaction of class members to the proposed settlement."  Staton,

10   327 F.3d at 959.

11             Through initial disclosures and informal discovery,

12   defendants provided a substantial amount of information that

13   appears to have allowed the parties to adequately assess the

14   value of plaintiff's and the class' claims.  (See Bello Decl.

15   ¶ 6.)  Defendants provided electronic timecard data for 2,088

16   class members during the class period, consisting of

17   approximately 242,000 workweeks.  (Id.)  Defendants further

18   provided data like number of class members, workweeks, pay

19   periods, and average rate of pay, as well as written company

20   policies relating to each of plaintiff's claims.  (Id.)  This

21   factor weighs in favor of final approval of the settlement.

22             The seventh Staton factor, pertaining to government

23   participation, also weighs in favor of approval.  Staton, 327

24   F.3d at 959.  Under PAGA, "[t]he proposed settlement [must be]

25   submitted to the [LWDA] at the same time that it is submitted to

26   the court."  Cal. Lab. Code § 2669(k)(2).  Here, plaintiff

27   provided a copy of the settlement agreement to the LWDA on

28   October 26, 2020, and February 22, 2021, and gave notice to the

                                  15

1  agency of the date and time of the preliminary approval and final

2  approval hearings.  (Bello Decl. ¶ 48.)  As of the date of this

3  order, the LWDA has not sought to intervene or otherwise objected

4  to the PAGA settlement.  This factor therefore weights in favor

5  of final approval of the settlement.

6         The eighth Staton factor, the reaction of the class

7  members to the proposed settlement, also weighs in favor of final

8  approval.  See Staton, 327 F.3d at 959.  No class members

9  objected to the settlement, and only one class member opted out.

10 See id.

11        The court therefore finds that the remaining Staton

12 factors weigh in favor of preliminary approval of the Settlement

13 Agreement.  See Ramirez, 2017 WL 3670794, at *3.

14        In sum, the four factors that the court must evaluate

15 under Rule 23(e) and the eight Staton factors, taken as a whole,

16 appear to weigh in favor of the settlement.  The court will

17 therefore grant final approval of the Settlement Agreement.

18     C.   Attorneys' Fees

19        Federal Rule of Civil Procedure 23(h) provides, "[i]n a

20 certified class action, the court may award reasonable attorney's

21 fees and nontaxable costs that are authorized by law or by the

22 parties' agreement."  Fed. R. Civ. P. 23(h).  If a negotiated

23 class action settlement includes an award of attorneys' fees,

24 that fee award must be evaluated in the overall context of the

25 settlement.  Knisley v. Network Assocs., 312 F.3d 1123, 1126 (9th

26 Cir. 2002); Monterrubio v. Best Buy Stores, L.P., 291 F.R.D. 443,

27 455 (E.D. Cal. 2013) (England, J.).  The court "ha[s] an

28 independent obligation to ensure that the award, like the

settlement itself, is reasonable, even if the parties have already agreed to an amount." Bluetooth Headset, 654 F.3d at 941.

"Under the 'common fund' doctrine, 'a litigant or a lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable [attorneys'] fee from the fund as a whole.'" Staton v. Boeing Co., 327 F.3d 938, 969 (9th Cir. 2003) (quoting Boeing Co. v. Van Gemert, 444 U.S. 472, 478 (1980)).  In common fund cases, the district court has discretion to determine the amount of attorneys' fees to be drawn from the fund by employing either the percentage method or the lodestar method.  Id.  The court may also use one method as a "cross-check[ ]" upon the other method. See Bluetooth Headset, 654 F.3d at 944.

As part of the settlement, the parties authorized plaintiff's counsel to seek attorney's fees totaling 33% of the $4,500,000 Gross Settlement Amount ("GSA"), or $1,500,000. (See Settlement Agreement ¶ M(3).)  However, plaintiff's counsel now seeks only 25% of the GSA, or $1,125,000. (See Mot. for Final Approval at 18.)  Once attorneys' fees and costs, the plaintiff's service award, the PAGA allocation, and the estimated costs of settlement administration have been distributed, an estimated Net Settlement Amount of approximately $3,221,637.23 will be distributed to the members of the settlement class. (See Mot. for Final Approval at 5.)  This works out to an average net share of approximately $1,064.79 per class member. (See Bello Decl. ¶ 34.)  Counsel represents that this award represents a favorable result for the class that will bring meaningful relief. (Id.)  A

17

review of wage and hour class action settlements in this district
confirms that this appears to be a favorable recovery for class
members that will be available without further delay.  See, e.g.,
Cooley v. Indian River Transp. Co., No. 1:18-cv-00491 WBS, 2019
WL 2077029 (E.D. Cal. May 10, 2019) (finding that $450.14
recovery per truck driver class member was a "favorable" result);
Ontiveros v. Zamora, No. 2:08-cv-00567 WBS DAD, 2014 WL 3057506
(E.D. Cal. July 7, 2014) (observing that an average recovery of
$6,000 was "a generous amount" and citing cases approving lower
per-class-member averages $601.91 and $1,000.00).

        Like other complex employment class actions, this case
presented both counsel and the class with a risk of no recovery
at all.  (Bello Decl. ¶ 33.)  Plaintiff here faced a risk that he
would not prevail on a contested motion for class certification,
that he would not be able to prove up damages across the class,
and that defendants would prevail on one or more of their
affirmative defenses, including defenses that their security
checks merely deprived class members of de minimus amounts of
wages or that their rounding policy did not, on the whole, result
in class members being underpaid.  (Id.)  Plaintiff's counsel
represents that his firm purely works on contingency.  (See id.
at ¶ 40.)  The nature of contingency work inherently carries
risks that counsel will sometimes recovers very little to nothing
at all, even for cases that may be meritorious.  See Kimbo v. MXD
Group, Inc., Case No. 2:19-cv-00166 WBS KNJ, 2021 WL 492493, at
*7 (E.D. Cal. Feb. 10, 2021).  Where counsel do succeed in
vindicating statutory and employment rights on behalf of a class
of employees, they depend on recovering a reasonable percentage-

1   of-the-fund fee award to enable them to take on similar risks in
2   future cases.  See id.  Plaintiff's counsel argues that, in light
3   of the strong result and substantial risk taken in this case, a
4   25% fee, as requested here, is reasonable.

5        The Ninth Circuit has established 25% of the fund as
6   the "benchmark" award that should be given in common fund cases.
7   Six (6) Mexican Workers v. Ariz. Citrus Growers, 904 F.2d 1301,
8   1311 (9th Cir. 1990).  As this court recently noted, "a review of
9   California cases . . . reveals that courts usually award
10  attorneys' fees in the 30-40% range in wage and hour class
11  actions that result in recovery of a common fun[d] under $10
12  million."  Watson v. Tennant Co., No. 2:18-cv-02462 WBS DB, 2020
13  WL 5502318, at *7 (E.D. Cal. Sep. 11, 2020) (awarding 33.33% of
14  settlement fund); see also Osegueda v. N. Cal. Inalliance, No.
15  18-cv-00835 WBS EFB, 2020 WL 4194055, at *16 (E.D. Cal. July 21,
16  2020) (same); Cooley, 2019 WL 2077029, at *20 (fee award of 33%
17  of the common fund in class action alleging missed meal and rest
18  breaks for class of truck drivers).  Given that the requested fee
19  is in line with the Ninth Circuit's benchmark for reasonable fee
20  requests in common fund cases, and, if anything, seems to be
21  lower than the percentage that is routinely awarded in cases of
22  this type, the court agrees that plaintiff's counsel's requested
23  percentage of the common fund is reasonable, especially when
24  viewed in light of the substantial recovery obtained on behalf of
25  class members and the risks undertaken by plaintiff's counsel in
26  this case.

27       A "lodestar-multiplier" cross-check confirms the
28  reasonableness of the requested award.  Plaintiff's counsel has

calculated a lodestar figure in this case of $346,305.00.  (See
Bello Decl. ¶¶ 41-43, 46.)  Plaintiff's counsel maintains
contemporaneous billing logs which reflect time billed in one-
tenth of an hour increments.  (Id. at Ex. 12; Decl. of Sahag
Majarian ("Majarian Decl."), Ex. A.)  Attorneys at the two firms
representing plaintiff represent that they have dedicated
approximately 491.17 hours of work to this case.[4]  (Id. ¶¶ 47.)
The firms are highly specialized in wage and hour matters and
class action cases, and their hourly rates have been approved by
a number of federal and state courts in California.  (Bello Decl.
¶¶ 39-45; Majarian Decl. ¶ 4.)

In his accompanying declaration, Mr. Bello states that
one of the attorneys at his firm, Mr. Lavi, did "not record[]
many hours which he estimates to be 40 hours expended on phone
calls with co-counsel, the client, Defendant's Counsel, and the
mediator, and expended in research and review/drafting of
documents."  Accordingly, the court will deduct 40 hours from Mr.
Lavi's lodestar estimate.  Instead of $138,075 (184.1 hours x
$750/hour), the court will use a lodestar estimate of $108,075
for Mr. Lavi.

Plaintiff's counsel's calculated lodestar figure
results in an overall lodestar multiplier of approximately 3.25.
After adjusting Mr. Lavi's lodestar estimate, the overall
lodestar multiplier plaintiff seeks is 3.56 ($1,125,000 divided
by lodestar of $316,305).  In class actions, "[m]ultipliers can

---

[4]    The hourly rates of the three attorneys who worked on
this matter are $650 per hour, $750 per hour, and $700 per hour,
respectively. (Bello Decl. ¶¶ 43, 46.)

range from 2 to 4 or even higher." <u>Wershba v. Apple Computer, Inc.</u>, 91 Cal. App. 4th 224, 255 (2001).[5]  "Indeed, 'courts have routinely enhanced the lodestar to reflect the risk of non-payment in common fund cases.'" <u>Vizcaino</u>, 290 F.3d at 1051 (approving fee award where lodestar cross-check resulted in multiplier of 3.65); <u>see also id.</u> at 1052 n.6, appx. (collecting cases and finding that risk multiplier fell between 1.0 and 4.0 in 83% of cases); <u>In re NASDAQ Market-Makers Antitrust Litig.</u>, 187 F.R.D. 465, 489 (S.D.N.Y. 1998) (awarding 3.97 multiplier and observing that "[i]n recent years multipliers of between 3 and 4.5 have become more common").

Factors considered in determining the appropriate lodestar multiplier generally include: (1) the risks presented by the contingent nature of the case; (2) the difficulty of the questions involved and the skill requisite to perform the legal service properly; (3) the nature of the opposition; (4) the preclusion of other employment by the attorney from accepting the case; and (5) the result obtained. <u>Ketchum v. Moses</u>, 24 Cal. 4th 1122, 1132 (Cal. 2001); <u>Graham v. DaimlerChrysler Corp.</u>, 34 Cal. 4th 553, 582 (Cal. 2004); <u>Serrano v. Priest</u>, 20 Cal.3d 25, 48-49 (Cal. 1977).  Given the risks undertaken by plaintiff's counsel, the defenses likely to be raised by defendant, the strong result for the class, as well as plaintiff's counsel's representation that their firms had to forego requests other opportunities for employment to ensure that they would be able to adequately and

---

[5]   Federal courts incorporate California state law on deciding an appropriate multiplier when the claims are brought under California state law.  <u>Vizcaino v. Microsoft Corp.</u>, 290 F.3d 1043, 1047 (9th Cir. 2002).

1  successfully represent plaintiff and the class in this matter

2  (Mot. for Final Approval at 22), the court finds that these

3  factors support a multiplier of 3.56 in this case.  See Johnson

4  v. Fujitsu Tech. & Bus. of Am., Inc., No. 16-cv-03698-NC, 2018

5  U.S. Dist. LEXIS 80219, at *20 (N.D. Cal. May 11, 2018) (finding

6  multiplier of 4.37 to be reasonable); In re NCAA Ath. Grant-In-

7  Aid Cap Antitrust Litig., 2017 U.S. Dist. LEXIS 201108, at *21

8  (N.D. Cal. Dec. 6, 2017) (finding multiplier of 3.66 to be "well

9  within the range of awards in other cases"); Kimbo v. MXD Group,

10  Inc., No. 2:19-cv-00166 WBS KJN, 2021 WL 492493, at *8 (E.D. Cal.

11  Feb. 10, 2021) (granting final approval where lodestar crosscheck

12  yielded multiplier of 3.7).

13       Accordingly, the court finds the requested fees to be

14  reasonable and will approve counsel's motion for attorneys' fees.

15       D.   Costs

16       "There is no doubt that an attorney who has created a

17  common fund for the benefit of the class is entitled to

18  reimbursement of reasonable litigation expenses from that fund."

19  In re Heritage Bond Litig., Civ. No. 02-1475, 2005 WL 1594403, at

20  *23 (C.D. Cal. June 10, 2005).  Here, the parties agreed that

21  plaintiff's counsel shall be entitled to recover reasonable

22  litigation costs, not to exceed $15,000.  (Settlement Agreement

23  ¶ M(3).)  Counsel's litigation expenses and costs are $11,362.77.

24  (Bello Decl. ¶ 47.)  These expenses include filing fees, court

25  fees, mediation fees, legal research, and data analysis.  (Id.)

26  The court finds these are reasonable litigation expenses.

27  Therefore, the court will grant class counsel's request for costs

28  in the amount of $11,362.77.

22

1          E.   Representative Service Award

2               "Incentive awards are fairly typical in class action

3     cases." Rodriguez, 563 F.3d at 958.  "[They] are intended to

4     compensate class representatives for work done on behalf of the

5     class, to make up for financial or reputational risk undertaken

6     in bringing the action, and, sometimes, to recognize their

7     willingness to act as a private attorney general." Id. at 958-

8     59.

9               Nevertheless, the Ninth Circuit has cautioned that

10    "district courts must be vigilant in scrutinizing all incentive

11    awards to determine whether they destroy the adequacy of the

12    class representatives . . . ." Radcliffe v. Experian Info.

13    Solutions, Inc., 715 F.3d 1157, 1164 (9th Cir. 2013).  In

14    assessing the reasonableness of incentive payments, the court

15    should consider "the actions the plaintiff has taken to protect

16    the interests of the class, the degree to which the class has

17    benefitted from those actions" and "the amount of time and effort

18    the plaintiff expended in pursuing the litigation." Staton, 327

19    F.3d at 977 (citation omitted).  The court must balance "the

20    number of named plaintiffs receiving incentive payments, the

21    proportion of the payments relative to the settlement amount, and

22    the size of each payment." Id.

23               In the Ninth Circuit, an incentive award of $5,000 is

24    presumptively reasonable. Davis v. Brown Shoe Co., Inc., No.

25    1:13-01211 LJO BAM, 2015 WL 6697929, at *11 (E.D. Cal. Nov. 3,

26    2015) (citing Harris v. Vector Marketing Corp., No. C-08-5198

27    EMC, 2012 WL 381202, at *7 (N.D. Cal. Feb. 6, 2012) (collecting

28    cases).  The single named plaintiff, Lucas Mejia, seeks an

                                    23

1   incentive payment of $7,500.  (Mot. for Final Approval at 22-24.)

2   Mejia represents that he has devoted significant time and

3   resources to the case for over two years, risking both his

4   finances and his reputation.  (Decl. of Lucas Mejia ("Mejia

5   Decl.") ¶ 5 (Docket No. 28-4).)  As set forth in his declaration,

6   Mejia sought out an attorney for his employment claims in fall

7   2018.  (See id.)  He provided his attorneys with information

8   regarding his experiences at Walgreens, spent time searching for

9   policies and other documents spanning his seven-year employment

10  with Walgreens, and spoke with and located some of his former

11  coworkers to see if they would be willing to provide additional

12  evidence or come forward as witnesses.  (Id.)  Mejia traveled

13  from Woodland, California, to Irvine, California, to attend and

14  participate in mediation.  (Id.)  Mejia participated in

15  negotiations and, once the Settlement Agreement was finalized, he

16  spent time reviewing it and discussing it with his attorneys

17  before signing it on behalf of himself and the class.  (See id.

18  at ¶¶ 3-5.)  These efforts by Mejia appear to be significant, and

19  support awarding him with an incentive payment.  See Staton, 327

20  F.3d at 977.

21          In addition, Mejia's contributions to the litigation

22  will significantly benefit the class.  Mejia appears to have

23  played a key role in bringing this case to the attention of class

24  counsel to challenge what he viewed as unfair business practices

25  that resulted in employees being paid less than they were owed

26  under California labor laws.  (See id. at ¶ 4.)  Mejia's efforts

27  in bringing the case, along with the professional risk he exposed

28  himself to by volunteering to act as a class representative, have

1  resulted in a strong result for the class.  (See Bello Decl.
2  ¶ 34.)

3        In light of Mejia's efforts and risks incurred in
4  bringing this action, the court finds his requested incentive
5  award of $7,500 to be reasonable and will approve the award.
6  II.  Conclusion

7        Based on the foregoing, the court will grant final
8  certification of the settlement class and will approve the
9  settlement set forth in the settlement agreement as fair,
10 reasonable, and adequate.  The Settlement Agreement shall be
11 binding upon all participating class members who did not exclude
12 themselves.

13       IT IS THEREFORE ORDERED that plaintiff's unopposed
14 motion for final approval of the parties' class action settlement
15 and attorneys' fees, costs, and a class representative service
16 payment (Docket No. 28) be, and the same hereby is, GRANTED.

17       IT IS FURTHER ORDERED THAT:

18       (1) Solely for the purpose of this settlement, and
19 pursuant to Federal Rule of Civil Procedure 23, the court hereby
20 certifies the following class: all current and former non-exempt
21 employees who worked at any of defendants' California distribution
22 centers at any time between November 6, 2014, and June 2, 2020.

23       (2) The court appoints the named plaintiff Lucas Mejia
24 as class representative and finds that he meets the requirements
25 of Rule 23;

26       (3) The court appoints law firm of Lavi & Ebrahimian,
27 LLP and the Law Offices of Sahag Majarian II as class counsel and
28 finds that they meet the requirements of Rule 23;

(4) The settlement agreement's plan for class notice is the best notice practicable under the circumstances and satisfies the requirements of due process and Rule 23.  The plan is approved and adopted. The notice to the class complies with Rule 23(c)(2) and Rule 23(e) and is approved and adopted;

(5) The court finds that the parties and their counsel took appropriate efforts to locate and inform all class members of the settlement.  The Settlement Administrator has identified Wesley Bishop as an employee who has timely requested exclusion from the settlement and thus has been excluded from the class, is not a class member, and is not bound by the judgment or release in this action.  Given that no class member filed an objection to the settlement, the court finds that no additional notice to the class is necessary;

(6) As of the date of the entry of this order, plaintiff and all class members who have not timely opted out of this settlement herby do and shall be deemed to have fully, finally, and forever released, settled, compromised, relinquished, and discharged defendants of and from any and all settled claims, pursuant to the release provisions stated in the parties' settlement agreement;

(7) Plaintiff's counsel is entitled to fees in the amount of $1,125,000, and litigation costs in the amount of $11,362.77;

(8) CPT Group, Inc. is entitled to administration costs in the amount of $22,000;

(9)  Plaintiff Lucas Mejia is entitled to an inventive award in the amount of $7,500;

1    (10) $112,500 from the gross settlement amount shall be

2    paid to the California Labor and Workforce Development Agency in

3    satisfaction of defendants' alleged penalties under the Labor

4    Code Private Attorneys General Act;

5    (11) The remaining settlement funds shall be paid to

6    participating class members in accordance with the terms of the

7    Settlement Agreement; and

8    (12) This action is dismissed with prejudice.  However,

9    without affecting the finality of this Order, the court shall

10   retain continuing jurisdiction over the interpretation,

11   implementation, and enforcement of the Settlement Agreement with

12   respect to all parties to this action and their counsel of

13   record.

14   The clerk is instructed to enter judgment accordingly.

15   Dated:   March 23, 2021

16   WILLIAM B. SHUBB

17   UNITED STATES DISTRICT JUDGE

18

19

20

21

22

23

24

25

26

27

28